[Civ. No. 27647. First Dist., Div. Two. Sept. 22, 1971.]

ELIZABETH BLODGETT, Plaintiff and Appellant, v.
BOARD OF TRUSTEES,
TAMALPAIS UNION HIGH SCHOOL DISTRICT,
Defendant and Respondent.

**COUNSEL**

A. Leonard Bjorklund, Jr., for Plaintiff and Appellant.

Douglas J. Maloney, County Counsel, and Richard V. Godino, Assistant County Counsel, for Defendant and Respondent.

**OPINION**

**SHOEMAKER, P. J.**—This is an appeal by plaintiff Elizabeth Blodgett from a judgment denying her application for a writ of mandate ordering her reemployment as a physical education teacher by the defendant Board of Trustees of the Tamalpais Union High School District.

The facts as adduced at the administrative hearing are as follows: Plaintiff is an experienced physical education teacher with a master's degree in physical education. Plaintiff started teaching in 1949 and taught full time until January 1965, when she injured her knee while demonstrating a trampoline exercise for her high school class. During her recovery she did not work, but in the fall of 1965, with her recovery almost complete, she decided to resume her teaching career on a part-time basis and accepted employment as a day-to-day substitute at Redwood High School and

various other Marin County schools. In January 1966, she became a long term substitute at Redwood High School, having been recommended by Myrna Reed, the chairman of the girls' physical education department at Redwood High School, and by Donald Kreps, the school principal. In April 1966, she was hired as a full-time probationary teacher for the school year 1966-1967. Plaintiff was recommended for this position both by Miss Reed and Mr. Kreps. In March 1968, she was notified her contract would not be renewed upon the recommendation of the principal, because her overweight condition rendered her unfit for service. An administrative hearing upheld the board of trustees' action; thereafter, the trial court denied an application for a peremptory writ of mandate.

When plaintiff commenced substitute teaching in the fall of 1965, she was 39 years old, 5 feet 7 inches tall and weighed 226 pounds. Plaintiff was under medical direction for her weight problem and was dieting with the aid of medication. In April 1966, when plaintiff was appointed to a full-time position for the ensuing school year, she weighed between 200 and 205 pounds. Mr. Kreps and Miss Reed had both taken plaintiff's overweight condition into consideration before recommending her for full-time employment. Miss Reed testified that she considered plaintiff "slightly heavy," but was not overly concerned because she knew that plaintiff was dieting. Mr. Kreps likewise testified that although he considered plaintiff overweight, he knew that she was losing weight and he believed that she had her weight problem under control.

In September 1966, when plaintiff commenced teaching on a full-time basis, her weight had not varied appreciably and she weighed 206 pounds. She stopped medical supervision at that time because the medication prescribed was causing headaches, nervousness and a general feeling of debilitation.

During the school year 1966-1967, Mr. Kreps undertook on two occasions to observe and evaluate plaintiff's performance as a teacher. Kreps' first appraisal report, written in November 1966, was highly favorable. He noted that plaintiff had an excellent academic background and many years of successful teaching experience; that she worked well with her colleagues in physical education; that her relationship with her students was friendly and direct and it was evident that she had their confidence and respect and that they were receptive to her directions and instruction; that she was hard working and sincere, anxious to perform her duties in a professional and competent manner and was friendly, outgoing and able to relate well to both teachers and students; that she was to be commended for helping to establish a broad interscholastic program in girls' athletics.

Kreps' second appraisal report, written in late March 1967, was again highly favorable to plaintiff, in a similar vein to the November 1966 report.

Neither of the reports written by Kreps contained any reference to plaintiff's overweight condition or any unfavorable comment upon her physical condition. Kreps testified that he did not consider it a problem at the time. Plaintiff weighed 234 pounds on March 1, 1967.

Mr. Kreps testified that he first became concerned about plaintiff's weight in May 1967. Kreps had two conferences with plaintiff and discussed the matter with her. She agreed to consult another physician concerning her weight problem, and in early June 1967, Kreps received a letter from Dr. Alderson stating that he was treating plaintiff and believed that she would be successful in losing weight.

Plaintiff testified that Dr. Alderson placed her on a 1,200 calorie diet which she attempted to follow during the summer of 1967. However, when she returned to work in September 1967, her weight had increased to 250 pounds. She returned to Dr. Alderson and asked him to place her on a more restricted diet. She stopped eating lunch, but still weighed 246 pounds in December 1967. In late December 1967, Dr. Alderson referred plaintiff to another physician, Dr. Butler, because her inability to lose weight led him to recommend medical consultation. Plaintiff consulted Dr. Butler in January 1968, and he placed her on an 800 calorie diet. When she failed to lose any appreciable amount of weight during a period of several weeks, Dr. Butler prescribed thyroid and plaintiff then began to lose weight. By March 15, 1968, plaintiff had lost 18 pounds and weighed 228.

On March 14, 1968, plaintiff was notified that her principal, Mr. Kreps, had recommended that she not be reemployed for the school year 1968-1969. The recommendation was based upon plaintiff's "[e]vident unfitness for service," in that her physical condition rendered her unfit to instruct. Specifically, the recommendation stated that plaintiff was unable "to serve as a model of health and vigor as a teacher of girls' physical education" and that she was "[r]estricted in her ability to perform or teach aspects of the physical education program including but not limited to modern dance, trampoline, gymnastics, track and field."

Mr. Kreps testified that he believed a physical education teacher should not only have a good knowledge of the subject but should present to the students an image of physical health and vigor. Kreps stated that he had never questioned plaintiff's educational background, knowledge of the subject and ability to teach. However, he had become convinced that

plaintiff's overweight condition was presenting a bad image to the students and that it was also limiting her ability to demonstrate certain sports. Kreps based this conclusion upon two observations he had made of plaintiff's classes. In November 1967, he had observed plaintiff teaching a Swedish exercise class. When plaintiff demonstrated jumping rope, the class burst into laughter. Kreps was very disturbed and felt that plaintff was an object of ridicule for her students. In February 1968, Kreps observed plaintiff instructing a class in volleyball. Plaintiff demonstrated the proper method of volleying the ball, but used only her hands and arms without moving her body as a whole. During the remainder of the class, she did no more demonstrating and confined herself to supervising the basketball games and talking with students.

Kreps testified that he had also asked Miss Reed to observe plaintiff's classes on a weekly basis during January 1968. Miss Reed did so and reported to Kreps that plaintiff's overweight condition made it inappropriate to assign her to teach certain subjects. She also felt that plaintiff's overweight condition hampered her ability to run and jump and perform certain other basic movements.

Kreps conceded that there was no requirement that physical education teachers be able to demonstrate any particular course. It was also conceded that plaintiff's ability to control her class was not in issue.

Miss Reed testified that in January and February 1968, she had observed plaintiff teaching folk dance, square dance and volleyball. Plaintiff demonstrated well in the dancing classes but seemed out of breath after she had done so. Plaintiff was also able to demonstrate volleyball techniques as long as she did not have to move quickly from one spot to another. Miss Reed also testified that in her capacity as chairman of the girls' physical education department, she had had occasion to notice that when the girls were signing up for electives, some of them seemed biased against plaintiff and preferred not to be in her classes. In October or November 1967, Miss Reed had overheard some of the girls laughing at plaintiff and making derogatory remarks about her weight behind her back. Miss Reed also felt that she could not assign plaintiff to certain courses because plaintiff's overweight condition made it inappropriate for her to teach "slim-trim," modern dance or health education.

Miss Reed, like Mr. Kreps, admitted that it was entirely possible for a physical education teacher to function effectively without demonstrating the subjects she taught. She also admitted that plainiff at no time had had any problem controlling her classes. The fact that Miss Reed felt unable to assign plaintiff to certain classes had caused no problem with scheduling

in the physical education department, since there were other teachers able and willing to teach "slim-trim," modern dance and health education. Miss Reed admitted that student criticism of teachers is not a rare thing and that she herself had been criticized by students.

Plaintiff called as witnesses 14 parents whose daughters had been taught by plaintiff. Their testimony was to the effect that plaintiff was an excellent teacher who had inspired their daughters with real enthusiasm for physical education. Plaintiff had been extremely successful as a coach of swimming and trampoline, and the parents recalled no occasion when their daughters had commented unfavorably upon plaintiff's weight or had even mentioned the fact that she was heavy.

Another parent testified that her daughter had told her that none of the physical education teachers at Redwood High School demonstrated the courses they taught. It was stipulated that two other witnesses would give identical testimony.

Margaret Schaulis, a physical education teacher who had taught at Redwood High School for three years, testified that she had observed plaintiff teaching gymnastics and had found that she was extremely well organized and had good control of her class. Plaintiff's students were well behaved and performed very well. Mrs. Schaulis did not recall whether plaintiff had demonstrated for the class, and she stated that she herself mostly used students as demonstrators because they were more agile than she was. Mrs. Schaulis testified that she was unable to demonstrate many sports herself and knew of no teacher who could demonstrate all sports. In her opinion, plaintiff "actually epitomizes P.E." She got along exceptionally well with her students and was an excellent teacher. Mrs. Schaulis felt that it would be a real detriment to the girls' physical education program if plaintiff were not rehired. In Mrs. Schaulis' opinion, plaintiff's weight had no real bearing on her effectiveness as a teacher.

Eva Washington, a college professor with a doctorate in teacher education, testified that a teacher's weight was of minor importance and might be of no relevance whatever. She stated that anyone who taught was bound to encounter some ridicule and mockery from students. It was of no real significance as long as rapport with the students and control of the class were maintained.

Cathy Chapman, a college student majoring in physical education, testified that she had attended Redwood High School and had been taught by plaintiff. Miss Chapman had been coached by plaintiff on the swimming team and she had found plaintiff to be an excellent instructor

who knew everything about swimming and inspired great team spirit among the girls. Miss Chapman never knew any of plaintiff's students to ridicule her or to lose respect for her. Miss Chapman testified that during her four years at Redwood High School, she had never seen any teacher demonstrate on the gymnastic apparatus. She recalled little teacher demonstration in any of her physical education classes and stated that most demonstrations were performed by students. In Miss Chapman's opinion, it was preferable to use students as demonstrators because it encouraged class participation and the students were generally more agile than their teachers.

Plaintiff testified that she felt her weight had no real effect on her ability to teach physical education. She stated that she was able to demonstrate adequately for instructional purposes and that she felt that in some sports, such as gymnastics, teacher demonstration was unnecessary. Plaintiff felt that there was no physical education course which she was not able to teach, and she stated that she had never declined to teach a particular class. She also stated that all the physical education teachers at Redwood High School were given some opportunity to decide which courses they preferred to teach.

Plaintiff testified that she had at all times been in good health and had never had heart trouble, although she did admit that she got short of breath after performing a vigorous dance. She stated that she weighed 211½ pounds at the time of the hearing (May 1968) and felt that she was responding well to the thyroid prescribed by Dr. Butler.

Plaintiff testified that she had coached the girls' swimming and trampoline teams, although she did not demonstrate either sport. She had organized the swimming team in the spring of 1966 and between 65 and 80 girls turned out for the team. At the end of the first season, the team placed second in the intercounty competition. The team members then presented plaintiff with a commemorative plaque. Plaintiff testified that an even greater number of girls turned out for the second season of swimming, in the fall of 1967. The team again finished second, and the girls pooled their money and bought plaintiff an engraved stopwatch. Plaintiff also coached the trampoline team in 1967, and this team was likewise very successful in interschool competition. Plaintiff described the spirit of these teams as "tremendous."

With regard to the Swedish gymnastics class which Kreps had observed, plaintiff testified that the class was composed primarily of poor students who were not motivated and were taking the course to fulfill a compulsory requirement. Plaintiff stated that the class was atypical, insofar as the

negative attitude of the students was concerned, and that she considered it one of her worst classes.

Dr. Butler testified that plaintiff's weight problem was not one that he would term "severe." Plaintiff was generally in good health and there was no indication of a heart condition or of any other physical or emotional problem. Butler believed that with the aid of thyroid pills, plaintiff would continue to diet successfully.

Plaintiff's primary contention on appeal is that the evidence summarized above establishes as a matter of law that defendant board of trustees acted arbitrarily and without cause when it determined not to reemploy plaintiff for the school year 1968-1969. Plaintiff points out that pursuant to Education Code section 13443, subdivision (e) (now subd. (d)), a governing board's determination not to reemploy a probationary employee for the ensuing year "shall be for cause only" and "the cause shall relate solely to the welfare of the schools and the pupils thereof."

In the instant case, defendant board's decision not to reemploy plaintiff was based solely upon findings made by the hearing officer and adopted by defendant board. The findings in question were that plaintiff's physical condition rendered her unfit to teach, in that she was "unable to serve as a model of health and vigor as a teacher of girls' physical education." and was "restricted in her ability to perform or teach various aspects of the physical education program."

Plaintiff contends that these findings are without evidentiary support and that obesity may constitute cause for refusing to reemploy a probationary teacher only if such condition is shown to have impaired her ability to function effectively as a teacher and it would therefore be detrimental to the welfare of the school or its pupils to retain her. Plaintiff asserts that since the evidence in the instant case would support no such finding, it follows that defendant board acted arbitrarily and without cause when it determined not to reemploy her. We agree.

It is settled that a probationary teacher who is denied reemployment for cause, pursuant to Education Code section 13443, is entitled to bring an action for mandamus to compel his reemployment (*Thornton v. Board of Trustees* (1968) 262 Cal.App.2d 761, 763 [68 Cal.Rptr. 842]) and that it is for the courts to determine whether the cause relates to the welfare of the school and its pupils. (*McGlone v. Mt. Diablo Unified Sch. Dist.* (1969) 3 Cal.App.3d 17, 22 [82 Cal.Rptr. 225].)

We have not found a California case that has dealt with the precise question of whether obesity constitutes a cause for denying a teacher re-

employment; our courts have held that factors such as age, personal appearance or conduct do not constitute cause for dismissal unless they result in an impairment of teaching ability.

In *Thornton* v. *Board of Trustees, supra,* the action of the board denying a probationary teacher reemployment solely because she had attained the age of 65 was reversed.

In *Finot* v. *Pasadena City Bd. of Education* (1967) 250 Cal.App.2d 189 [58 Cal.Rptr. 520], it was held that the school board was not entitled to transfer a male teacher to a different teaching assignment merely because he had grown a beard and the principal and superintendent of schools believed that he was setting a bad example for the students.

In *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal. Rptr. 175, 461 P.2d 375], plaintiff's life teaching diplomas were revoked for cause on the ground that he had been guilty of immoral and unprofessional conduct. The conduct in question consisted of plaintiff's having engaged in a noncriminal physical relationship which was homosexual in nature. Our Supreme Court held that plaintiff's actions could not constitute immoral or unprofessional conduct justifying the revocation of his teaching diplomas unless his actions indicated unfitness to teach.

A thorough review of the evidence in the instant case shows that plaintiff was overweight but that this condition did not render her unfit to teach. Viewing the evidence in the light most favorable to defendant, it simply cannot be said that plaintiff's weight was shown to have significantly impaired her ability to demonstrate various sports. Mr. Kreps testified only that plaintiff did not move her whole body, as opposed to her hands and arms, when demonstrating volleyball. He did not state that her demonstration was in any way inadequate for instructional purposes. Miss Reed testified that plaintiff demonstrated well in dance classes and that she was also able to demonstrate volleyball techniques as long as she did not have to move quickly from one spot to another. Although Miss Reed did observe that plaintiff seemed out of breath following her dancing demonstration, this fact is of doubtful relevance. It was never contended that plaintiff was in poor health, and the evidence was directly to the contrary.

The record is replete with testimony to the effect that physical education teachers need not excel at demonstration in order to perform their instructional duties competently and well. Mr. Kreps admitted that there was no requirement that physical education teachers be able to demonstrate any particular course, and Miss Reed testified that a physical education teacher could function in an entirely effective manner without

demonstrating. There was other evidence that student demonstrators were equally or even more effective and ample testimony that other physical educational teachers at Redwood High School did little or no demonstrating themselves. Plaintiff's own ability to function as a capable physical education instructor without personally demonstrating the subjects she taught was apparent from her success with the swimming and trampoline teams.

In summary, the record contains no evidence that plaintiff's overweight condition substantially impaired her ability to demonstrate, and it likewise contains no evidence that any restriction in plaintiff's demonstration ability had an adverse effect on her effectiveness as a teacher.

The remainder of the evidence produced at the hearing related to plaintiff's image as a model of health and vigor. Testimony by Mr. Kreps and Miss Reed showed that on certain isolated occasions plaintiff's overweight condition had caused laughter or derision among her students and that it had also resulted in unwillingness on the part of some students to sign up for plaintiff's courses. However, the relevance of this testimony, as bearing upon plaintiff's effectiveness as a teacher, was never shown. It was conceded that she had no difficulty in controlling her classes. There was also uncontradicted testimony (and indeed, it would appear to be a matter of common knowledge) that occasional criticism and derision from students is an unavoidable hazard of the teaching profession. There was ample testimony that plaintiff was extremely well liked and respected by many of her students, and the fact that she did not enjoy universal popularity certainly cannot be deemed cause for refusing to reemploy her. As for her inability to serve as a "model" of health and vigor, plaintiff was overweight but was otherwise healthy and was not shown to be lacking in normal vigor. Any requirement that teachers exemplify the subjects they teach and embody all of the qualities which they hope to instill in their students would be utterly impossible of fulfillment. As for any contention that plaintiff set a bad example which her students might imitate, it is apparent that obesity, by its very nature, does not inspire emulation.

The most striking aspect of this case is that plaintiff weighed 226 pounds when she first began teaching at Redwood High School, weighed 234 pounds when Kreps made his second favorable appraisal of her teaching performance and weighed 228 pounds when she was notified that her physical condition rendered her unfit for reemployment. The record shows that plaintiff was an exceptionally competent physical education teacher when weighing 234 pounds, and that Kreps did not consider that her weight had in any way detracted from her effectiveness as a teacher. It is evident from the record that plaintiff was performing her duties as a

teacher in an equally exemplary manner when Kreps arbitrarily chose not to recommend plaintiff for reemployment.

█ The instant case clearly involves a situation where a physical condition unrelated to plaintiff's fitness as a teacher was used as a pretext for refusing to reemploy her. In *Parolisi* v. *Board of Examiners of City of New York* (1967) 55 Misc.2d 546 [285 N.Y.S.2d 936] (a New York trial court decision), the court determined in a well-reasoned opinion that the plaintiff could not be denied a teaching license solely because she was overweight. The court noted that although the plaintiff weighed 221 pounds, there was no evidence to support the medical director's finding that this condition interfered with the plaintiff's safety or that of others. The court stated, "This finding presumes that overweight is inexorably related to agility, something which a lot of football coaches would dispute" (p. 939). The court concluded that "obesity, standing alone, is not reasonably and rationally related to the ability to teach or to maintain discipline" (p. 940).

The judgment is reversed, and the trial court is directed to issue the peremptory writ of mandate as prayed.

Taylor, J., and Kane, J., concurred.

A petition for a rehearing was denied October 22, 1971, and respondent's petition for a hearing by the Supreme Court was denied November 24, 1971.