[Civ. No. 38543. Second Dist., Div. One. Dec. 30, 1971.]

JOSEPH M. WATSON, JR., Plaintiff and Appellant, v.
STATE BOARD OF EDUCATION et al., Defendants and Respondents.

## COUNSEL

Andelson & Andelson and Arlen H. Andelson for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Thomas E. Warriner, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**LILLIE, Acting P. J.**—On March 14, 1969, petitioner, a teacher, applied to the Committee of Credentials, Department of Education, for a general secondary life diploma; issuance of the diploma was denied him on June 18, 1969. He appealed to respondent State Board of Education, which subsequently refused to adopt the proposed decision of the hearing officer to grant the diploma; thus, on September 16, 1970, it found petitioner "had committed acts involving unprofessional conduct and has demonstrated his unfitness for service in the public school system" and ordered denial of his application. Petitioner then sought writ of mandate from the superior court to compel the board to set aside its decision. The court denied the writ finding substantial evidence supports respondent's findings and concluding that petitioner is unfit for service in the public school system. He appeals from the judgment.

Two hearings were had before the hearing officer. At the first hearing, on December 9, 1969, the only evidence offered by the Department of Education was a written stipulation delineating 6 separate offenses,[1] each involving the use of alcohol for which petitioner was arrested and convicted,

---

[1] The hearing officer found each offense to be a crime of moral turpitude.

over a 10-year period commencing in June 1960: (1) June 27, 1960—public drunk (§ 647, subd. (f), Pen. Code); (2) June 27, 1966—guilty plea, drunk driving (§ 23102, Veh. Code); (3) November 7, 1966—guilty plea, public drunk;[2] (4) September 25, 1967—arrested for and charged with drunk driving guilty plea, reckless driving; (5) August 1, 1968—nolo contendere plea, drunk driving; (6) September 2, 1969—nolo contendere plea, drunk driving. Petitioner offered evidence as to his capacity, ability and willingness to serve as a teacher. The hearing officer recommended his application be granted. However, while the matter was pending before the state board, petitioner was again arrested for drunk driving (May 1, 1970). Thus, on August 6, 1970, a second hearing was had at which the Department of Education offered evidence of petitioner's arrest on May 1, 1970, for drunk driving and that he pleaded guilty to driving in more than one lane (§ 21658, subd. (a), Veh. Code). The evidence shows and respondent board and the trial court expressly found that on May 1, 1970, petitioner did "drive an automobile while under the influence of intoxicating liquor." Petitioner offered the opinion of a medical doctor that he is not an alcoholic.

Relying on *Morrison* v. *State Board of Education,* 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 175] and *Blodgett* v. *Board of Trustees,* 20 Cal. App.3d 183 [97 Cal.Rptr. 406], appellant contends that his diploma cannot be denied pursuant to section 13202 unless his conduct indicates he is unfit to teach, and the evidence is not sufficient to support the finding that he is unfit for service in the public school system. In *Morrison* v. *State Board of Education,* 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 175], our Supreme Court held that a revocation of a teaching credential upon the ground of immoral and unprofessional conduct and acts involving moral turpitude was not supported by the evidence limited to a showing that once three years before, while under severe strain, petitioner, a male teacher, had engaged with another male teacher in a private, limited, noncriminal physical relationship described as "of a homosexual nature." The court concluded that the act was unconnected with the teacher's conduct with his students and did not of itself demonstrate an unfitness to teach.

This court rejected the same contention based on *Morrison* made in *Alford* v. *Department of Education,* 13 Cal.App.3d 884 [91 Cal.Rptr. 843], wherein a teaching credential was revoked on the ground that petitioner had been diagnosed as a "schizophrenia-paranoid type," and affirmed the judgment denying petition for mandate. We said at page 889: "We do not construe *Morrison* as establishing the broad principle for which appel-

[2]Petitioner was fined $20 and placed on one year probation on condition he violate no laws and attend eight alcoholic anonymous meetings.

lant argues. We see nothing in that decision which departs from the general proposition that, in a proceeding to revoke or deny a teaching credential, the primary inquiry concerns the teacher's fitness to teach and the protection of the pupils who will be influenced by him. Thus, in *Morrison*, our Supreme Court says (1 Cal.3d 214, 236): 'As to this crucial issue, the record before the board and before the court contains no evidence whatsoever. The board called no medical, psychological, or psychiatric experts to testify as to whether a man who had had a single, isolated, and limited homosexual contact would be likely to repeat such conduct in the future. The board offered no evidence that a man of petitioner's background was any more likely than the average adult male to engage in any untoward conduct with a student.' *Morrison* thus seems to be a narrow decision, limited to its facts, and one decided primarily upon a disinclination of the majority of the court to permit judicial notice by the administrative agency or the trial court of the possibility that a man who had engaged in the conduct of the petitioner in that case might repeat it so as to render him unfit to teach. (See dissent of Justice Burke.)" Again, in *Board of Trustees* v. *Stubblefield*, 16 Cal.App.3d 820 [94 Cal.Rptr. 318], appellant's contention that *Morrison* prohibited his dismissal as a teacher because the evidence concerned only his conduct and did not expressly demonstrate how that conduct rendered him unfit to teach was rejected. He was dismissed because he and a female student were discovered partially disrobed in his parked car at night in an unlighted area by a deputy sheriff; defendant shouted, "Get the Hell away from me, you dirty cop," accelerated the car knocking the deputy to the pavement causing minor injuries and fled the scene. Disagreeing with appellant's broad interpretation of *Morrison,* the court said, ". . . we note that the court there was critical of the lack of *psychiatric or other evidence* to establish (1) '[t]hat a man of petitioner's background was any more likely than the average adult male to engage in any *untoward conduct with a student,' . . .* or (2) that publicity surrounding his conduct adversely affected his ability to teach. The clear import of that decision, then, is that a teacher may be discharged or have his certificate revoked on evidence that either his conduct indicates a potential for misconduct with a student or that his conduct while not necessarily indicating such a potential, has gained sufficient notoriety so as to impair his on-campus relationships." (P. 826.)

Reliance by appellant on *Blodgett* v. *Board of Trustees,* 20 Cal.App.3d 183 [97 Cal.Rptr. 406], is also misplaced. Therein a probationary teacher of physical education, who was denied re-employment by the school board which found her obesity rendered her unfit to teach the subject, sought mandate from the trial court to compel the board to re-employ her. The trial court upheld the dismissal but the appellate court reversed the judg-

ment because "the record contains no evidence that plaintiff's overweight condition substantially impaired her ability to demonstrate, and it likewise contains no evidence that any restriction in plaintiff's demonstration ability had an adverse effect on her effectiveness as a teacher." (P. 192.) The court concluded, at page 192: "As for any contention that plaintiff set a bad example which her students might imitate, it is apparent that obesity, by its very nature, does not inspire emulation."

■ Quite different from the past, isolated, private, non-criminal act of *Morrison,* and the physical condition of *Blodgett,* neither of which alone the court found to be related to petitioner's fitness to serve as a teacher, is the course of criminal conduct extending over a 10-year period in the instant case. There is here involved no private, isolated, noncriminal act which occurred years before, but a series of convictions for criminal offenses, all involving the use of alcohol, constituting a continuing course of conduct, public in nature. Petitioner persistently and publicly continued his criminal conduct, not only for 10 years up to the time of the first hearing, but even during the time the matter of the issuance of his diploma was pending before the board necessitating a second administrative hearing on August 6, 1970.

While no evidence against petitioner other than proof of a series of convictions involving alcohol was offered, it amply demonstrates his unfitness to teach in the public schools. First, one of the main concerns of parents and school administrators is the effect of the use of and overindulgence in alcohol on their youngsters. The great importance the Legislature has attached to problems caused by alcohol use is reflected in the Education Code (§§ 8503,[3] 8504[4] and 9304[5]); and section 5530, title 5, California Administrative Code, requires all certified personnel to "exercise careful supervision over the moral conditions in their respective schools; [they] shall not tolerate any act of a pupil described in section 301," i.e., "the use or possession of . . . intoxicating liquor" on the school grounds or elsewhere when under authority or direct supervision of school personnel "or when such conduct is otherwise related to school activity or school attendance." (§ 301, subd. (a).) Moreover, it is apparent from the number

---

[3]"The adopted course of study shall provide instruction at the appropriate elementary and secondary grade levels [in] . . . health, including the effects of alcohol, . . . upon the human body." (§ 8503, Ed. Code.)

[4]"Instruction upon the nature of alcohol . . . and [its] effects upon the human system as determined by science shall be included in the curriculum of all elementary and secondary schools. . . ." (§ 8504, Ed. Code.)

[5]"The board shall include in the textbooks and teachers' manuals adopted such materials as it may deem necessary and proper to . . . teach . . . the evil effects of alcohol . . . on the human system." (§ 9304, Ed. Code.)

of arrests and the conduct involved that petitioner's use of alcohol is excessive; the trial judge characterized him as "as alcoholic" with a "real" and "serious alcoholism problem." He was not the first to conclude this for as early as November 7, 1966, a municipal judge recognized that petitioner had a serious alcoholic problem when, after his plea of guilty to drunk in a public place he placed him on probation for one year on the condition he attend eight alcoholic anonymous meetings. Petitioner's medical opinion to the contrary notwithstanding, it is obvious that his use of alcohol has gotten entirely out of his control, for at a time when he knew his conduct was under state board scrutiny and the board was considering whether his diploma should be issued, petitioner was again arrested "driving an automobile while under the influence of intoxicating liquor." It can hardly be denied that he has a drinking problem of long standing. It is unreasonable to conclude, therefore, that petitioner can have the proper concerned attitude necessary for successfully counseling and directing young students away from the harmful effects of alcohol. Further, as observed by the trial judge, there are bound to be "some occasions when he is not in the best of health in the morning when he is teaching."

Second, petitioner's course of conduct has been public in nature. Repeatedly his excessive use of alcohol has been brought to the attention of the authorities; his infractions are public offenses, he was arrested in public places, the charges against him required public appearances and his convictions became matters of public record. Certainly being arrested as a public drunk or for driving a vehicle while under the influence of alcohol does not create in petitioner the example young people at an impressionable age need; and petitioner's complete lack of concern with his state of sobriety when in public and on the highway places in jeopardy the welfare not only of the school community, as a serious threat to the protection of the students, but of the public. Referring to the many instances of drunk driving, the trial judge commented, "there is some *mens rea* involved, namely, acting with abandon so as to put other members of the public in danger. That doesn't set a very good example for young people." Appropos is the Supreme Court's comment in *Morrison* v. *State Board of Education,* 1 Cal.3d 214, pages 229-230, footnote 28 [82 Cal.Rptr. 175, 461 P.2d 375], made after setting up the criteria to be used in determining whether a teacher's conduct indicates unfitness to teach: "Since the record contains no evidence that the instant matter received any publicity prior to the board's action, we express no opinion as to when, if ever, a teacher could be disciplined merely because he persistently and publicly violated important and universally shared community values in such a manner as demonstrably to handicap his relations with, or control over, his students."

Third, perhaps of greater concern in this day when various forces in our society encourage disrespect for discipline and authority and disregard for law and order, are petitioner's criminal convictions which in the judge's opinion "clearly indicate and speak for themselves that this man is unfit to teach and work with young people. . . . I don't know what better evidence there could be of immorality than a series of criminal convictions." "As between a teacher and his student, '[a]n important part of the education . . . is the instilling of a proper respect for authority and obedience to necessary discipline. Lessons are learned from example as well as from precept.' (*Johnson* v. *Taft School Dist.,* 19 Cal.App.2d 405, 408 [65 P.2d 912].) And as our Supreme Court said in *Board of Education* v. *Swan,* 41 Cal.2d 546, at page 552 [261 P.2d 261], 'A teacher . . . in the public school system is regarded by the public and pupils in the light of an exemplar, whose words and actions are likely to be followed by the [students] coming under [his] care and protection.' " (*Board of Trustees* v. *Stubblefield,* 16 Cal.App.3d 820, 824 [94 Cal.Rptr. 318].) It would seem that even minimum responsible conduct on the part of a teacher necessarily excludes a consistent course of law violations and convictions which can do no less than give the students a bad example of proper respect for law and authority. The teaching by example as well as precept, of obedience to properly constituted authority and discipline necessary to a well ordered society is an important part of education.

The judgment is affirmed.

Thompson, J., and Clark, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 23, 1972. Mosk, J., was of the opinion that the petition should be granted.