[No. C060831. Third Dist. May 6, 2010.]

SHIRLEY MARIE BRONEY, Plaintiff and Appellant, v.
CALIFORNIA COMMISSION ON TEACHER CREDENTIALING,
Defendant and Respondent.

---

## Counsel

Rothschild, Wishek & Sands and Jon-Paul Valcarenghi for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Niromi W. Pfeiffer and Susan E. Slager, Deputy Attorneys General, for Defendant and Respondent.

---

## Opinion

**NICHOLSON, Acting P. J.**—Rejecting statutory terms, such as "immorality," "unprofessional conduct," or "moral turpitude" as overly broad to use as grounds for discipline of public school teachers, the California Supreme Court has created its own seven-part test to assess whether a misbehaving teacher is fit to teach. (*Morrison v. State Board of Education* (1969) 1 Cal.3d 214, 224–225 [82 Cal.Rptr. 175, 461 P.2d 375] (*Morrison*).)[1] We must apply that test here.

Plaintiff Shirley Marie Broney is an elementary school teacher. Between 1987 and 2002, she was convicted of three drunken driving offenses. Defendant California Commission on Teacher Credentialing (the Commission) took note, held a hearing, found plaintiff was unfit to teach, and suspended her teaching credential for 60 days. It stayed that suspension subject to plaintiff successfully completing a three-year probation.

Plaintiff petitioned for extraordinary relief from the Commission's decision, but the trial court denied her petition. It found her latest conviction rendered her unfit to teach per se. It also determined upon weighing the evidence under the *Morrison* test that the Commission's discipline was not arbitrary or unreasonable.

Plaintiff appeals, claiming the trial court erred by applying a per se rule. She also asserts no substantial evidence could support the Commission's decision. We agree with plaintiff that the trial court applied the wrong test. However, its error was not prejudicial. It is not reasonably probable that the

---

[1] The test has been promulgated as a regulation. (See Cal. Code Regs., tit. 5, § 80302.)

court would have reached a different result had it applied the *Morrison* test to the issue of fitness to teach instead of a per se test, as its analysis of the Commission's discipline under the *Morrison* test demonstrates plaintiff was unfit to teach. We thus affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

### 1. *Criminal background*

Plaintiff was convicted in 1987 at the age of 21 of one count of driving under the influence. (Veh. Code, § 23152, subd. (a).)[2] Plaintiff did not have a teaching credential at that time. The incident happened at night on a weekend. It was not near school property and no children were involved. This conviction was expunged in 1992 under Penal Code section 1203.4.

In 1997, plaintiff was convicted of driving under the influence and driving with a blood-alcohol content of 0.08 percent or greater. (§ 23152, subds. (a), (b).) Plaintiff had just begun her student teaching at the time. This incident also happened at night on a weekend. It was not near school property and no children were involved.

The trial court placed plaintiff on probation for three years. It also ordered her to complete a 90-day first-offender drinking driver program. Plaintiff also attended Alcoholics Anonymous as part of this program. This conviction was expunged in 2007 under Penal Code section 1203.4.

On November 4, 2001, at approximately 1:50 a.m., Huntington Beach police arrested plaintiff on suspicion of driving under the influence. This incident did not involve children or occur on or near school property. It occurred on a weekend at night after plaintiff had been to a bar with friends. As plaintiff and her friends walked toward a parking garage, a police officer stopped and spoke with them. After speaking with the officer, plaintiff's friends took a taxi, but plaintiff continued to the garage and entered her car. The officer arrested her for driving her vehicle in the parking garage. Plaintiff failed all of the field sobriety tests given her.

In August 2002, plaintiff pleaded guilty to driving under the influence with a prior (§ 23152, subd. (a)), and driving with a blood-alcohol content of 0.08 percent or greater (§ 23152, subd. (b)). She also admitted an enhancement under section 23578 of driving with a blood-alcohol level of 0.20 percent or greater. She stated in her plea that her blood-alcohol level was 0.25 percent at the time of her arrest.

---

[2] Subsequent references to sections are to the Vehicle Code unless designated otherwise.

The court sentenced plaintiff to 30 days in jail, which it allowed her to fulfill at home and at work in the classroom by wearing an ankle bracelet. The court also placed plaintiff on probation for three years, and it ordered her to complete an 18-month multiple-offender alcohol education program. Plaintiff again attended Alcoholics Anonymous as part of this program. This conviction was expunged in November 2006 under Penal Code section 1203.4.

## 2. *Credentialing history*

Plaintiff first applied to the Commission in 1995 for character and identification clearance. In this application, plaintiff disclosed to the Commission her 1987 conviction.

In 1997, shortly after her second DUI (driving under the influence) conviction, plaintiff applied to the Commission for a teaching credential. In this application, plaintiff disclosed her 1997 conviction and sentence.

The Commission granted plaintiff her credential effective May 30, 1997. The credential authorized plaintiff to teach multiple subject matter classes in a self-contained classroom in grade 12 and below. This credential was valid until June 1, 2002. Subsequently, the Commission renewed plaintiff's credential effective June 1, 2002, until June 1, 2007. Plaintiff also holds a cross-cultural, language and academic development certificate authorizing her to teach limited-English-proficient students.

At the time of her third arrest and conviction in 2001–2002, plaintiff was employed by the Westminster School District in Orange County as a fifth grade teacher. She had worked for the district since 1999.

## 3. *Commission's disciplinary accusation, hearing and decision*

Nearly two years after her 2002 conviction, plaintiff was notified by letter dated June 14, 2004, that the Commission had begun an investigation into her fitness to hold a credential as a result of her three DUI convictions. Ultimately, the Commission found cause to recommend a 60-day suspension of her credential. On November 8, 2004, plaintiff requested an administrative hearing to challenge the recommendation.

Another two years passed until November 1, 2006, when plaintiff was served with an accusation issued by the Commission's executive director. The accusation alleged plaintiff's 2001 arrest and 2002 conviction constituted unprofessional conduct and subjected her to discipline. It asked for plaintiff's credential to be suspended for a minimum of 60 days.

a. *Evidence presented at hearing*

The matter was heard by Administrative Law Judge (ALJ) Joseph D. Montoya on June 11, 2007. The Commission's evidence of unprofessional conduct and unfitness to teach consisted solely of police and government reports attesting to plaintiff's three prior convictions and documentation of her credentials.

Plaintiff's case consisted of her testimony, the testimony and report of a licensed substance abuse counselor, Dan Cronin, and the testimony and evaluations of plaintiff's school principal, Linda Reed. In her testimony, plaintiff admitted her three DUI convictions.[3] She denied being an alcoholic, missing school because of drinking, working with a hangover, or showing up to school drunk. She acknowledged she had "made some really bad choices," and stated she "will never, ever drink and drive again because I have too much to lose."

On cross-examination, plaintiff agreed that maintaining the integrity of the teaching profession was important, and that teachers acted as role models. She stated only two other people knew of her 2002 conviction: a fellow teacher and her principal. She stated she drinks on occasion, such as having a glass of wine when she goes out to dinner at a nice restaurant, but she does not drink and drive, even if all she has had is a glass of wine.

Counselor Cronin was hired by plaintiff to determine if she had a substance abuse problem and, if she did, the most appropriate level of treatment for her. Cronin concluded plaintiff was not an alcoholic, had a low probability of substance dependence, and that she did not need any kind of therapy for alcohol abuse. His conclusion was based on an assessment of her he performed by telephone, an assessment performed by one of his staff members, another assessment performed by a second substance abuse counselor, and on an evaluation of her performed by a psychologist, Jerry Brown.

Brown had found plaintiff to be "psychologically normal and high functioning." He found plaintiff had some probability of "acting out," but was of the opinion plaintiff was fit to teach. Plaintiff does not drink during the week and limits her drinking to the weekend, usually with dinner. In a 24-hour period of time, she drinks from one to three drinks of alcohol. The largest amount she consumed on any particular day was four drinks. Cronin attached Brown's report to his report.

---

[3] Although plaintiff admitted her third conviction, she claimed she was not driving at the time she was arrested.

Under cross-examination, Cronin explained that a probability of acting out was similar to someone who might speed, or who might make the "mistake" of drinking and driving, "you know, somebody that's more extroverted."

The ALJ asked Cronin why he did not think plaintiff was likely to drink and drive again if she has a propensity for acting out. Cronin stated he believed "she's learned her lesson, that she is remorseful, and that she's consistent enough in all of her answers, and all of her testing show that she has learned her lesson."

Principal Reed described plaintiff as a very dedicated and talented teacher who works well with children. Plaintiff holds her students accountable to high standards, and most of her students will meet grade level expectations before the end of the year. She works very hard and is passionate about what she does. If anything, her flaw is caring too much about her work.

Reed, whose father was an alcoholic and who had experience dismissing employees because of alcoholism, was familiar with the signs of alcoholism and its adverse effects on a person's employment. In her experience, alcoholic employees missed Fridays and Mondays, came in late, left early, took naps during the day, had red bloodshot eyes, staggered around, were ill prepared and angry, and took inappropriate actions with children. Reed saw nothing remotely close to these traits in plaintiff's work ethic. And no student or parent had ever asked about plaintiff's DUI convictions.

Each time Reed had formally evaluated plaintiff as a teacher, she determined plaintiff performed satisfactorily in every area. Reed continued to stand by her evaluations of plaintiff at the hearing. Indeed, in many of the reviewed areas of performance, Reed would have graded plaintiff as exemplary, but the form used for evaluations allowed the reviewer to state only that the teacher's performance was satisfactory or unsatisfactory.

On cross-examination, Reed agreed that teachers acted as role models. Reed believed plaintiff had made "three very poor choices," but she did not see how they impacted the teaching and learning of children. She did agree, however, it was important how a teacher acted outside of school, and that a teacher who drank and drove, and who was arrested and convicted of DUI, engaged in unprofessional conduct.

b. *ALJ and Commission decisions*

Upon reviewing the evidence, the ALJ determined the Commission had failed to prove unprofessional conduct, and he recommended the accusation be dismissed. The ALJ stated that discipline may not be imposed unless the

conduct is substantially related to the person's fitness to teach, citing *Morrison, supra,* 1 Cal.3d 214, 229. He also cited the seven factors set out in *Morrison* and at title 5, section 80302, of the California Code of Regulations which the Commission is to use to determine whether a sufficient nexus exists between the teacher's conduct and her fitness to teach. However, the ALJ did not reach the issue of whether a sufficient nexus had been shown in this case. He determined the Commission's evidence, consisting only of the fact of plaintiff's convictions, failed to show how her actions constituted unprofessional conduct because it did not establish that her conduct violated any rules or ethical codes of the teaching profession.[4]

The Commission rejected the ALJ's proposed decision. At its March 5, 2008, meeting, the Commission adopted its own decision and order, and it determined plaintiff had committed unprofessional conduct and her conduct indicated she was unfit to teach. Unlike the ALJ, the Commission relied upon the *Morrison* factors (set out in greater detail below) to determine whether plaintiff's misconduct rendered her unfit to teach. It concluded her conduct did, in fact, render her unfit to teach. The Commission suspended plaintiff's credentials for 60 days, and it stayed the suspension subject to plaintiff's successful completion of a three-year probationary period.

The conditions of probation required plaintiff to undergo a psychiatric evaluation and, if needed, continuing therapy leading to a positive evaluation; to obey all federal, state, and local laws; and to submit quarterly reports to the Commission certifying under penalty of perjury her compliance with all probation conditions.

### 4. *Trial court proceedings*

Plaintiff petitioned the Sacramento County Superior Court for a writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. She claimed the Commission abused its discretion mainly in that its findings were not supported by the weight of the evidence. In particular, she challenged the sufficiency of the evidence supporting the Commission's finding under the *Morrison* factors that plaintiff's conduct rendered her unfit to teach. Plaintiff also sought attorney fees pursuant to Government Code section 800 and Code of Civil Procedure sections 1021.5 et seq. and 1028.5 et seq.

The trial court denied plaintiff's petition. It determined plaintiff's convictions demonstrated unfitness to teach as a matter of law, or per se, under the

---

[4] The ALJ determined the witnesses were all credible in their demeanor while testifying, especially principal Reed. The witnesses gave direct responses to questions, made good eye contact, and gave no hint of prevarication. He thought Reed was especially credible due in part to her personal experience with those suffering from alcohol addiction.

rule of *Watson v. State Bd. of Education* (1971) 22 Cal.App.3d 559, 563 [99 Cal.Rptr. 468] (*Watson*). Thus, it found it unnecessary to reach plaintiff's argument that no evidence supported the Commission's findings under the *Morrison* factors.

Nevertheless, the trial court stated the *Morrison* factors were relevant for reviewing the propriety of the discipline imposed by the Commission. It reviewed the Commission's findings under the *Morrison* factors and determined the findings were supported by the weight of the evidence. It thus concluded the penalty imposed by the Commission did not constitute an abuse of discretion. The court entered judgment against plaintiff and denied her requests for attorney fees.

Plaintiff appeals the judgment against her. She claims the trial court erred (1) by adopting a per se test for determining fitness to teach in lieu of applying the *Morrison* factors, and (2) by limiting the *Morrison* factors to its review of the reasonableness of the penalty. She also asserts (3) that when the *Morrison* factors are properly applied to her case, no substantial evidence supports a finding of unfitness to teach.

### DISCUSSION

### I

#### Standard of Review

"When a trial court rules on a petition for writ of mandate following a license revocation [or suspension], it must exercise its independent judgment to determine whether the weight of the evidence supported the administrative decision. [Citations.] After the trial court has exercised its independent judgment upon the weight of the evidence, an appellate court's function 'is solely to decide whether credible, competent evidence supports [the trial] court's judgment.' (*Yakov* [*v. Board of Medical Examiners* (1968) 68 Cal.2d 67,] 69, 72 [64 Cal.Rptr. 785, 435 P.2d 553] ['the question before this court turns upon whether the evidence reveals substantial support, contradicted or uncontradicted, for the trial court's conclusion . . . .'].)" (*Finnerty v. Board of Registered Nursing* (2008) 168 Cal.App.4th 219, 227 [85 Cal.Rptr.3d 364].)

We review questions of law de novo. (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107–108 [73 Cal.Rptr.2d 523].) "Error of law is not reversible unless, on an examination of the record, it appears to have resulted in a miscarriage of justice." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 322, p. 369; see Cal. Const., art. VI, § 13.)

## II

### *Use of Per Se Rule of Unfitness to Teach*

Plaintiff claims the trial court erred when it adopted a per se rule of unfitness to teach. She asserts Supreme Court case law prohibits the application of a per se rule in a matter such as this, and *Watson* at best established rebuttable inferences a court could consider in addition to the *Morrison* factors. We agree with plaintiff on this point, but we ultimately conclude any error was not prejudicial.

### A. *Legal background*

■ The Commission is authorized to revoke or suspend a teacher's credentials for "immoral or unprofessional conduct . . . or for any cause that would have warranted the denial of an application for a credential or the renewal thereof, or for evident unfitness for service." (Ed. Code, § 44421.)

■ However, "[i]n order to satisfy constitutional due process, '[t]he state's power to regulate a profession cannot be used arbitrarily to penalize conduct having no demonstrable bearing upon fitness for its practice.' (*Cartwright v. Board of Chiropractic Examiners* (1976) 16 Cal.3d 762, 767 [129 Cal.Rptr. 462, 548 P.2d 1134].) Thus, conduct used as a basis for revocation or suspension of a professional license must demonstrate unfitness to practice that profession. (*Ibid.*) . . .

■ "In *Morrison*[, *supra*, 1 Cal.3d 214], a public school teacher resigned after it became known he engaged in a homosexual relationship with another teacher. Thereafter the State Board of Education revoked his life diplomas pursuant to Education Code [former] section 13202, which authorized discipline for ' "immoral or unprofessional conduct." ' (*Morrison*, at p. 217, fn. 1; see also *id.* at pp. 218–220.) The Supreme Court concluded terms such as 'immoral,' 'unprofessional,' or 'involving moral turpitude' are too broad and amorphous to be used as a basis for the termination of a professional license. Rather, it must be shown the conduct in question indicates an unfitness to engage in the profession.

■ "The court explained: 'Terms such as "immoral or unprofessional conduct" or "moral turpitude" stretch over so wide a range that they embrace an unlimited area of conduct. In using them the Legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval. Hence the courts have consistently related the terms to the issue of whether, when applied to the performance of the employee on the job, the employee has

disqualified himself.' (*Morrison, supra*, 1 Cal.3d at pp. 224–225.) The court concluded the State Board of Education could not abstractly characterize the conduct in the case as 'immoral,' 'unprofessional,' or 'involving moral turpitude' within the meaning of Education Code [former] section 13202 unless that conduct indicated the petitioner was unfit to teach. (*Morrison*, at p. 230.)" (*Watson v. Superior Court* (2009) 176 Cal.App.4th 1407, 1416 [98 Cal.Rptr.3d 715].)

▮ The *Morrison* court went on to establish seven factors an administrative agency such as the Commission should utilize to determine whether the unprofessional conduct demonstrated unfitness to teach: "In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as [1] the likelihood that the conduct may have adversely affected students or fellow teachers, [and] the degree of such adversity anticipated, [2] the proximity or remoteness in time of the conduct, [3] the type of teaching certificate held by the party involved, [4] the extenuating or aggravating circumstances, if any, surrounding the conduct, [5] the praiseworthiness or blameworthiness of the motives resulting in the conduct, [6] the likelihood of the recurrence of the questioned conduct, and [7] the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. These factors are relevant to the extent that they assist the board in determining whether the teacher's fitness to teach, i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the board's standards." (*Morrison, supra*, 1 Cal.3d at pp. 229–230, fns. omitted.)

▮ The Commission may also take into account the notoriety and publicity accorded a teacher's conduct. (*Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 701, fn. 5 [139 Cal.Rptr. 700, 566 P.2d 602] (*Jack M.*).) Moreover, if the teacher's conduct is sufficiently notorious that the students know or are likely to learn of it, and if the teacher continues to model his past conduct, the Commission may infer that the teacher's conduct may result in student emulation, but such an inference is disputable. (*Id.* at p. 699 & fn. 4.)

B. *Analysis*

As explained above, the trial court was to determine whether the weight of the evidence supported the Commission's findings. Here, the trial court concluded it was not necessary in this case to weigh the evidence under the *Morrison* factors to determine if plaintiff's actions rendered her unfit to teach. Rather, it concluded under *Watson, supra*, 22 Cal.App.3d 559, that plaintiff's convictions rendered her unfit to teach per se. This was incorrect.

■ A teacher whose credential is being investigated for possible adverse action is per se unfit to teach only when the teacher has been convicted of a crime which the Legislature has declared requires the imposition of automatic sanctions on that teacher's credentials. (*Jack M., supra*, 19 Cal.3d at p. 698, fn. 3; *Pettit v. State Board of Education* (1973) 10 Cal.3d 29, 33 [109 Cal.Rptr. 665, 513 P.2d 889].) In all other circumstances, fitness to teach is a question of ultimate fact. (*Jack M., supra*, 19 Cal.3d at p. 698, fn. 3; *West Valley-Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1775 [21 Cal.Rptr.2d 5].)

Driving under the influence is not an offense specified by the Legislature as sufficient per se to justify suspension or revocation of teaching credentials. (See, e.g., Ed. Code, §§ 44424, subd. (a) [conviction of listed serious felonies requires automatic revocation], 44425, subd. (a) [conviction of certain sex offenses and controlled substance offenses requires automatic suspension].)

Thus, the trial court erred in concluding plaintiff's driving under the influence convictions rendered her unfit to teach per se. Plaintiff was entitled to a fitness hearing where the trier of fact weighed the *Morrison* factors to determine whether she was unfit to teach on account of her unprofessional conduct. (*Jack M., supra*, 19 Cal.3d at p. 702.)

The trial court's reliance on *Watson* as the basis for imposing a per se rule of unfitness based upon plaintiff's convictions is misplaced. In *Watson*, the Second Appellate District Court of Appeal affirmed a trial court's determination that an applicant for a teaching credential who had six alcohol convictions over a 10-year period, and a seventh while his application was pending, was unfit to teach. (*Watson, supra*, 22 Cal.App.3d at pp. 560–561.) The only evidence of unfitness to teach was the applicant's convictions, and the appellate court held they were sufficient evidence to demonstrate unfitness. (*Id.* at p. 563.)

■ The *Watson* court's holding was based in part on its belief that *Morrison* was " 'a narrow decision, limited to its facts . . . .' " (*Watson, supra*, 22 Cal.App.3d at p. 562.) More than five years after *Watson* was decided, however, the Supreme Court reaffirmed its *Morrison* ruling and expanded its application. In *Jack M.*, the high court stated *Morrison* applied not only to a credential revocation but also to a proceeding for dismissal of a credentialed teacher on the basis of immoral or unprofessional conduct. (*Jack M., supra*, 19 Cal.3d at p. 697, fn. 2.) In addition, the court stated that *Morrison* "made it clear that the [fitness] hearing could not be limited to the single question whether the teacher committed the charged [criminal] act." (*Jack M.*, at p. 701, fn. omitted.) A person convicted of a crime not listed as requiring

automatic sanction is entitled to a fitness hearing that determines fitness based on the *Morrison* factors. (*Ibid.*) To the extent *Watson* holds otherwise, we decline to follow it.

Having now concluded the trial court erred in applying a per se rule, we must determine whether the error was prejudicial. As we will explain, it was not.

## III

### *Lack of Prejudicial Error*

■ A judgment may not be reversed on appeal unless "after an examination of the entire cause, including the evidence," it appears the error caused a "miscarriage of justice." (Cal. Const., art. VI, § 13.) "When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. [Citation.]" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

To apply this standard, we review the record to determine if an error of law was prejudicial "when considered in light of the weight of the evidence. And the process is, in a sense, a review of facts." (9 Witkin, Cal. Procedure, *supra*, § 322, p. 369.)

■ In this matter, we can say without hesitation there is not a reasonable probability plaintiff would have received a more favorable judgment had the trial court not applied a per se rule to determine her fitness to teach. We know this because the trial court, in addition to applying a per se rule, weighed the evidence under the *Morrison* factors. Although it did this in the context of determining the reasonableness of the penalty, it weighed all of the evidence and performed the same analysis it would have performed had it applied the *Morrison* factors to the issue of plaintiff's fitness to teach. It determined the weight of the evidence supported the Commission's findings of fact under the *Morrison* factors. We reach the same conclusion.

Only the pertinent *Morrison* factors need to be analyzed. (*West Valley-Mission Community College Dist. v. Concepcion, supra,* 16 Cal.App.4th at p. 1777.) The trial court reviewed six of the seven. We will do the same.

Factor No. 1: Likelihood that plaintiff's conduct may have adversely affected students or teachers. The evidence supports the trial court's finding that plaintiff's behavior and conviction may have adversely affected students

or teachers. There is conflicting evidence on this point. Plaintiff testified that only a coworker and her principal knew of the conviction. The principal also stated plaintiff was an excellent teacher who had never exhibited traits of alcoholism at work. However, plaintiff was required to wear an ankle bracelet at school to fulfill her sentence. Students may have seen her wearing the bracelet. *Morrison* asks us to focus on the "likelihood" that this conduct "may" have adversely affected students and other teachers. (*Morrison, supra,* 1 Cal.3d at p. 229.) We agree with the trial court that plaintiff's wearing an ankle bracelet to school for a month may have adversely affected others. It especially would have adversely impacted plaintiff's ability to earn the respect of her students.

Factor No. 2: The proximity or remoteness in time of the conduct. The evidence supports the court's finding that plaintiff's conduct was not remote in time. Her conduct took place in late 2001, she was convicted in 2002, and the Commission began its hearing two years later. The court also noted her conduct was not remote in time even as of the 2008 hearing on plaintiff's petition "given [plaintiff's] record of repeated convictions occurring at intervals of ten and five years." We agree with that assessment.

Factor No. 3: The type of plaintiff's teaching credential. The evidence supports the court's finding that the type of credential plaintiff held was relevant to determining her fitness to teach under these circumstances. Plaintiff's credential authorized her to teach elementary school children, and she was in fact teaching fifth grade at the time of her 2002 conviction. "Given the impressionable nature of children at that age," the court wrote, "which is not disputed here, [plaintiff's] multiple alcohol-related convictions are of serious concern." We agree with this finding.

Factor No. 4: Extenuating or aggravating circumstances, if any, surrounding the conduct. The evidence supports the trial court's conclusion that aggravating circumstances surrounding the conduct bore upon plaintiff's fitness to teach. On her 2002 conviction, plaintiff admitted she had a blood-alcohol content of 0.25 percent when she was arrested, more than three times the legal limit. Yet she was willing to endanger public safety by driving while severely intoxicated. As the trial court found, such irresponsible conduct "is incompatible with a teacher's status and duties."

Factor No. 5: The praiseworthiness or blameworthiness of the motives resulting in the conduct. The evidence supports the court's finding that there was nothing praiseworthy about defendant's conduct. "The lack of praiseworthiness in [plaintiff's] conduct speaks for itself."

Factor No. 6: The likelihood of the recurrence of the questioned conduct. The evidence supports the court's finding of a risk that plaintiff will reoffend.

Plaintiff testified she no longer drinks and drives. However, this was her third conviction, after having been on probation for three years for her second offense and after attending alcohol education classes and Alcoholics Anonymous. Moreover, plaintiff continues to drink regularly. As the trial court stated, these facts raise a legitimate concern about whether plaintiff will reoffend.

Plaintiff's expert testimony did not diffuse the possibility of her reoffending. Although Cronin stated plaintiff was not an alcoholic, Brown stated she had a probability of "acting out." And Cronin defined a probability of acting out as a person with a personality who might drink and drive. Although Cronin thought plaintiff would not drink and drive again, his testimony implied there was a risk she would.

Our review of the record thus indicates the trial court reached the correct result under *Morrison*. Because the trial court applied the *Morrison* factors to the evidence and found the suspension was justified, it is not likely it would have reached a different conclusion had it applied the *Morrison* factors on the issue of fitness to teach. It effectively applied *Morrison* to both issues.

 Plaintiff faults the Commission and the trial court for allegedly not giving deference to the ALJ's factual findings based on his determination of the witnesses' credibility. She relies on Government Code section 11425.50, subdivision (b), which requires reviewing courts to give great weight to factual determinations based substantially on the credibility of a witness where the ALJ identifies specific evidence of credibility that supports the factual determination.[5]

Here, the ALJ found plaintiff's witnesses to be credible based on their demeanor and, with Reed, her personal experience. Plaintiff argues that under Government Code section 11425.50, we must give great weight to their testimony and should adopt the ALJ's decision.

 Government Code section 11425.50 is not as binding on us as plaintiff suggests. "As reflected in the Law Revision Commission comments to section 11425.50: 'Findings based substantially on credibility of a witness must be identified by the presiding officer in the decision made in the adjudicative proceeding. . . . However, the presiding officer's identification of

---

[5] The statute reads in relevant part: "If the factual basis for the decision includes a determination based substantially on the credibility of a witness, the statement shall identify any specific evidence of the observed demeanor, manner, or attitude of the witness that supports the determination, and on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it." (Gov. Code, § 11425.50, subd. (b).)

such findings is not binding on the agency or the courts, which may make their own determinations whether a particular finding is based substantially on credibility of a witness. Even though the presiding officer's determination is based substantially on credibility of a witness, the determination is entitled to great weight only to the extent the determination derives from the presiding officer's observation of the demeanor, manner, or attitude of the witness. Nothing in subdivision (b) precludes the agency head or court from overturning a credibility determination of the presiding officer, after giving the observational elements of the credibility determination great weight, whether on the basis of nonobservational elements of credibility or otherwise. See Evid. Code, § 780.' (25 Cal. Law Revision Com. Rep. [(1995)] p. 161 . . . .)" (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 588 [128 Cal.Rptr.2d 514], italics omitted.)

We have considered the testimony of plaintiff's witnesses. Unfortunately for plaintiff, that testimony either did not address all of the *Morrison* factors or it undercut itself, and thus is not entitled to the dispositive effect plaintiff hopes to obtain. We do not question Reed's credibility to the extent she testified of facts. However, Reed admitted that plaintiff, a role model, engaged in unprofessional conduct. Her statement that plaintiff made "three very poor choices" discounts what plaintiff really did: she committed three criminal acts that endangered the safety of the public. Reed's testimony also addressed only one of the *Morrison* factors, and plaintiff's fitness to teach is to be based on more than just the principal's observations of plaintiff.

Plaintiff's experts fare worse. Even though plaintiff has been convicted three separate times for DUI, has served jail time, has been on criminal probation twice, has attended Alcoholics Anonymous for many months, and has participated in court-ordered drinking driving programs, she continues to drink. According to her experts, she drinks from one to three drinks of alcohol in a 24-hour period of time, occasionally consuming as much as four drinks in a day. And yet her experts claim the likelihood of her reoffending is small, even though they admit she has a probability of acting out, which they state means a possibility of drinking and driving again. The weight of all of the evidence in this case simply does not support the experts' conclusions.

We thus conclude the trial court's incorrect application of a per se test did not result in prejudicial error. The court applied the relevant *Morrison* factors as found by the Commission and determined the weight of the evidence supported them. Our review of the record indicates the trial court reached the correct result under *Morrison*. Accordingly, the trial court would have determined that the *Morrison* factors indicated plaintiff was unfit to teach.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to the Commission. (Cal. Rules of Court, rule 8.278(a).)

Raye, J., and Hull, J., concurred.