[Civ. No. 19638. First Dist., Div. Two. July 31, 1961.]

NICHOLAS C. VOGULKIN, Appellant, v. STATE BOARD OF EDUCATION et al., Respondents.

John R. Golden, Richard H. Perry and Varnum Paul for Appellant.

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Respondents.

McCABE, J. pro tem.*—By his complaint, plaintiff alleges he held teaching credentials in the State of California from January 1, 1939, to about April 30, 1958, and was during that time employed by the San Francisco Unified School District. On about March 6, 1958, plaintiff was arrested and charged with a violation of section 702, Welfare and Institutions Code; the precise subsection is not described but all parties have presented the matter as a crime falling within the provisions of section 12912, Education Code. After a preliminary hearing, plaintiff was bound over for trial. On June 18, 1958, plaintiff entered a plea of guilty to the charges and was granted probation. In the interim period and on April 30, 1958, in anticipation of defendant state board's invoking the provisions of section 13207, Education Code, plaintiff requested voluntary revocation of his teaching credentials, which request was granted by defendant state board on May 1, 1958. On November 23, 1959, upon plaintiff's motion, the Superior Court of the City and County of San Francisco terminated plaintiff's probation, set aside his plea of guilty and ordered the information dismissed. On the same day, plaintiff filed with defendant commission of credentials an application "for reinstatement, reissuance or issuance" to him of his teaching credential. Accompanying this application was a letter from plaintiff's attorney requesting defendant state board to set the application for hearing and asserting the unconstitutionality of sections 12912 and 13130, Education Code. Defendant commission of credentials met in December, 1959, and January, 1960. Not having heard from the defendant commission, plaintiff's attorney, by letter, requested information as to the disposition of plaintiff's application. No reply was received. Later, on February 9, 1960, plaintiff,

*Assigned by Chairman of Judicial Council.

by telegram, requested advice as to the status of his application, to which no reply was received. Plaintiff alleges he has exhausted his administrative remedies.

Plaintiff by his action seeks (1) to enjoin defendant State Board of Education of the State of California and the Commission of Credentials of the State of California from enforcing the provisions of sections 12912, 13207 and 13130, Education Code, (2) a declaration that these sections are unconstitutional as violative of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and of the constitutional provisions of the State of California, and (3) an order directing defendant state board to conduct a hearing to determine plaintiff's fitness to teach in the public schools of this state.

To the complaint, defendants entered a general demurrer which was sustained without leave to amend. From the judgment entered against him, plaintiff appeals.

Plaintiff's brief reveals his sole attack on this appeal is as to the constitutionality of the classification which denies him the right to a hearing upon an application for a credential to show he had been rehabilitated. He contends (1) it is constitutionally incompetent for the Legislature to base a classification of the capacity or incapacity for rehabilitations of convicted persons upon those crimes set forth in the Education Code sections, (2) the classification would not be reasonably calculated to protect public school children from sex offenders, and (3) there is no natural or intrinsic distinction between persons convicted under the various statutes justifying imposition of burdens on some and not on others.

It is to be noted that in April, 1958, plaintiff voluntarily requested the defendant state board to revoke his teaching credential. Therefore, upon this request being made, of course, defendant state board could take no other action (Ed. Code, § 13205).

■ "Revoke" means to annul or make void by recalling or taking back, cancel, rescind, repeal, reverse (see Black's Law Dictionary, 4th ed.; *O'Hagan* v. *Kracke,* 165 Misc. 4 [300 N.Y.S. 351]). No vestige of this credential remained in plaintiff.

The application filed by plaintiff with defendant commission of credentials on November 23, 1959, must be considered as an original application for a teaching credential. Plaintiff concurs in this position since in the November 23, 1959, letter to the

defendant commission, he states, "However, this is . . . an application for the issuance of a credential . . ."

Section 13130, Education Code, providing for a denial of an application of sexual psychopath or sex offender reads as follows: "The State Board of Education shall deny any application for the issuance of a credential or a life diploma or for the renewal of a credential made by any applicant who has been determined to be a sexual psychopath under the provisions of Chapter 4, Part 1, Division 6 of the Welfare and Institutions Code or under similar provisions of law of any other state or who has been convicted of any sex offense as defined in Section 12912."

Since section 13130, *supra,* refers to section 12912, applicable portions of the same code are set forth: " 'Sex offense' as used in Sections 13130 . . . of this code means any offense defined in Sections 266, 267, 285, 286, 288, 288a, 647a, subdivision 3 or 4 of Section 261, subdivision 5 of Section 647, or subdivision 2 of Section 311 of the Penal Code; or any offense defined in subdivision 1 of Section 311 of the Penal Code committed on or after the effective date of the amendment of this section made at the 1955 Regular Session by the Legislature; or any offense involving lewd and lascivious conduct under Section 702 of the Welfare and Institutions Code . . ."

Plaintiff seeks to interject such provisions of the Education Code as sections 13206, 13207, 13208, but these do not solve the problem nor lend support to plaintiff's position since these sections refer to the authority of the state board of education to suspend and/or revoke an existing teaching credential upon conviction of certain defined offenses or when the holder of a credential is determined to be a sexual psychopath. None of these sections is applicable here. Since plaintiff has applied for a credential, the matter is to be considered under section 13130 and allied sections. However, plaintiff uses these sections to illustrate that in certain types of crimes, a holder of a credential or a holder of a right under a suspended credential has the possibility of a hearing for reinstatement of his credential. His position is that under those sections wherein there is a right to a hearing, there are situations in which the holder has been convicted of an act of like nature to his and the holder of such a credential is entitled to a hearing but he is not, since his crime falls within the prohibition of those set forth in section 12912.

In *DiGenova* v. *State Board of Education,* 45 Cal.2d 255 [288 P.2d 862], the Supreme Court decided that the state

board of education did not have to hold a hearing to revoke the teaching credentials where the holder of the credentials had been convicted of a crime described in sections 12011.7 and 12756 (now 12912 and 13207 respectively). With this, plaintiff does not quarrel but contends that where there is an application for a credential, the interpretation given in the *DiGenova* case should not prevail. It is difficult to justify plaintiff's position. If the board has a mandatory duty under section 13207 to revoke when the holder of a credential is convicted of a crime described in section 12912, why doesn't the board have a mandatory duty to deny an application under section 13130 when the applicant has been convicted of a crime described in section 12912 and which section is incorporated by reference in section 13130? There can be no distinction made between the two situations particularly when the two sections use the same terminology. Section 36, Education Code, provides that " 'Shall' is mandatory and 'may' is permissive." The Legislature has declared its intention as to the construction of these words when used in the provisions of the Education Code.

Plaintiff contends that section 13130, Education Code, denies an equal protection of the law since it requires a mandatory revocation of a credential without a hearing and the holder of a credential can never be rehabilitated so as to qualify for another credential, whereas other holders or former holders of a credential not coming within the purview of section 13130, *supra,* and who are convicted of acts similar to that committed by him can apply for a reinstatement and/or a new certificate. Plaintiff believes that the classification of crimes set forth in section 12912 is unreasonable and arbitrary.

". . . [T]he test for determining the validity of a statute where a claim is made that it unlawfully discriminates against any class is substantially the same under the state prohibitions . . . and the equal protection clause of the federal Constitution" (*County of Los Angeles* v. *Southern Calif. Tel. Co.,* 32 Cal.2d 378, 389 [196 P.2d 773]).

There is a presumption in favor of the classification based upon legislative experience. It will not be declared unconstitutional unless it is plainly arbitrary (*Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194 [55 S.Ct. 187, 79 L.Ed. 281]).

The school children of our land are the future of the nation. The innocent mind in a formative state is subject to the immediate influences surrounding the child. The mate-

rial he is taught, the impressions he gains, the events occurring, the actions which he sees or hears about, the surroundings of his daily activities are a part of his education and are formulative of his future.

The state school board and the authorities within school districts must have not only the right to carefully screen the applicants for employment to its system but should be given a rule or basis for saying that a particular person is unworthy to have contact with or to teach our children. It has been stated in *Adler* v. *Board of Education,* 342 U. S. 485 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472], as follows:

". . . A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds toward the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted . . ." (p. 493).

By education, experience, study and research, certain areas of human activity, if participated in, may be such that no further right should exist in the person to be a member of a teaching profession whereas others may be of such nature the person so acting may be rehabilitated and no longer a menace in their contact with the school children. The Legislature having made a lengthy study of the problem before the enactment of the code sections herein involved has drawn a distinction between certain crimes. It is not for the courts to lightly disregard the classifications or to declare them discriminatory or to find they do not afford equal protection to all within the class designated.

Plaintiff argues that other persons who are as or more unworthy than he is are allowed to receive credentials or be reinstated. This argument fails when reviewed in the light of *Heron* v. *Riley,* 209 Cal. 507 [289 P. 160]; *Powers Farms* v. *Consolidated Irr. Dist.,* 19 Cal.2d 123 [119 P.2d 717].

It is aptly said in *Werner* v. *Southern Calif. etc. Newspapers,* 35 Cal.2d 121, 132 [216 P.2d 825, 13 A.L.R.2d 252]: ". . . It is not prohibited by the equal protection clause from striking the evil where it is felt most. (*Goesaert* v. *Cleary,* 335 U. S. 464, 466 [69 S.Ct. 198, 93 L.Ed. 163]; *Railway Express Agency* v. *New York,* 336 U. S. 106, 110 [69 S.Ct. 463, 93 L.Ed. 533].) In considering an analogous situation involving legislation limiting the right to recover damages for negligence

the United States Supreme Court said, '. . . there is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the legislature must be held rigidly to the choice of regulating all or none. [Citations.] In this day of almost universal highway transportation by motor car, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles do not present so conspicuous an example of what the legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit. [Citations.] It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs.' (*Silver* v. *Silver*, 280 U. S. 117, 123-124 [50 S.Ct. 57, 74 L.Ed. 221].) . . .''

 If there is some natural, intrinsic or constitutional distinction which acts uniformly upon the whole of any single class of individuals, the classification cannot be objected to on constitutional grounds (*Powers Farms* v. *Consolidated Irr. Dist., supra*; *Minnesota* ex rel. *Pearson* v. *Probate Court*, 309 U. S. 270 [60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530]).

 The classification need not depend upon scientific or marked differences (*Orient Insurance Co.* v. *Daggs*, 172 U. S. 557 [19 S.Ct. 281, 43 L.Ed. 552]).

Plaintiff places great stress upon the case of *People* v. *Western Fruit Growers*, 22 Cal.2d 494 [140 P.2d 13], to sustain his position. From that case, he cites the following portion of the opinion:

"In the leading case in this state on the question of the distinction between a general and special law, the court declared that a law is a general one when it applies equally to all persons embraced in a class founded upon some natural, intrinsic, or constitutional distinction; on the other hand, it is special legislation if it confers particular privileges, or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. [Citations.] Under this rule, it is apparent that the constitutional prohibition of special legislation does not preclude legislative classification but only requires that the classification be reasonable. [Cases cited.]

"Problems of classification under the California Constitution are thus similar to those presented by the federal equal protection of the laws clause of the 14th Amendment. Under

either provision, the mere production of inequality which necessarily results to some degree in every selection of persons for regulation does not place the classification within the constitutional prohibition. The discrimination or inequality produced, in order to conflict with the constitutional provisions, must be 'actually and palpably unreasonable and arbitrary,' or the legislative determination as to what is a sufficient distinction to warrant the classification will not be overthrown. [Cases cited.] When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification. [Cases cited.]'' (Pp. 506-507.)

Plaintiff emphasizes the words from this case ''or imposes peculiar disabilities or burdensome conditions . . . upon a class . . . arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law.'' The last phrase of the quoted portions of the opinion states the burden is upon the person who assails the classification to show the act is arbitrary in its classification.

Plaintiff feels there are others who should be included with him in the prohibitive provisions of the Education Code and since they are not, he should not have the burden thrust upon him. This position overlooks not only the discretion to classify which is lodged in the Legislature but the principle that legislation is not to be declared unconstitutional under the equal protection clause merely because there may be other instances to which the legislation might have been applied (*Keokee Consol. Coke Co.* v. *Taylor*, 234 U. S. 224 [34 S.Ct. 856, 58 L.Ed. 1288]).

Also in *Minnesota* ex rel. *Pearson* v. *Probate Court*, 309 U. S. 270 [60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530], in a case upholding the sexual psychopath law which was attacked on the ground that the statute selected a group which was part of a larger class, the court said:

''Equally unavailing is the contention that the statute denies appellant the equal protection of the laws. The argument proceeds on the view that the statute has selected a group which is a part of a larger class. The question, however, is whether the legislature could constitutionally make a class of the group it did select. That is, whether there is a rational basis for such a selection. We see no reason for doubt upon this point. Whether the legislature could have gone farther is not the

question. The class it did select is identified by the state court in terms which clearly show that the persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control. As we have often said, the legislature is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. If the law 'presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have applied.' *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78-79 [31 S.Ct. 337, 55 L.Ed. 369] ; *Miller* v. *Wilson,* 236 U. S. 373, 384 [35 S.Ct. 342, 59 L.Ed. 628, L.R.A. 1915F 829] ; *Semler* v. *Oregon State Dental Examiners,* 294 U. S. 608, 610, 611 [55 S.Ct. 570, 79 L.Ed. 1086] ; *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379, 400 [57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330]." (Pp. 274-275.)

Our Supreme Court has pronounced the same approach in *Lelande* v. *Lowery,* 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109], quoting from *Miller* v. *Wilson, supra.* (See also *Heron* v. *Riley, supra*; *Sacramento Mun. Util. Dist.* v. *Pacific Gas & Elec. Co.,* 20 Cal.2d 684 [128 P.2d 529] ; *Powers Farms* v. *Consolidated Irr. Dist.,* 19 Cal.2d 123 [119 P.2d 717] ; *Fullerton Oil Co.* v. *Johnson,* 2 Cal.2d 162 [39 P.2d 796] ; *Hunter* v. *Justice's Court,* 36 Cal.2d 315 [223 P.2d 465].)

In *People* v. *Lawrence,* 390 Ill. 499 [61 N.E.2d 361], the habitual criminal statute provided a convict might receive a higher penalty because of past conviction of certain crimes. It was contended the statute was in violation of the due process and equal protection provisions. The court in upholding the validity of the statute stated the classification need not be scientific, logical or consistent so long as it was reasonably adopted to secure the purpose for which it was intended and not palpably arbitrary.

Neither party has argued or briefed the point of exhausting administrative remedies but the facts as pleaded indicate the possible application of the appeal provisions of the Education Code. Plaintiff filed his application for issuance to him of a credential. Defendant commission of credentials, defined in section 13102, Education Code, did not act upon the application although plaintiff and his attorney made entreaties to that body to do so.

Section 13108, Education Code, provides in part, "Any applicant for a credential . . . who is dissatisfied with any

action taken by the Commission of Credentials may appeal to the State Board of Education which shall examine the application and either issue the document or deny the application."

Title 5, California Administrative Code, section 204 refers to section 13108, Education Code, on appeals and provides: ". . . Failure of the Commission of Credentials to issue a credential . . . within sixty days after a complete application has been filed with the Commission may, at the option of the applicant, be treated as a denial of the application. Such appeal may be taken by filing with the Secretary of the State Board of Education . . ."

Although more than 60 days from the date of filing the application had expired before this action was commenced, plaintiff filed no appeal to the defendant state board of education. Thus, the question is presented as to whether the doctrine of exhaustion of administrative remedies before bringing an action in a court of law is applicable. ■ This doctrine is defined in *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715], as follows: ". . . In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." Although the Supreme Court in the *Abelleira* case recognized limited exceptions to this rule, the facts of that case required the rule be enforced since the administrative body to which an appeal could be taken had within its power a right to take action. There are innumerable cases citing the same rule but there are limited exceptions to the rule. (See *Oklahoma Natural Gas Co.* v. *Russell,* 261 U. S. 290 [43 S.Ct. 353, 67 L.Ed. 659] [irreparable damage by reason of confiscatory rates]; *Ware* v. *Retirement Board,* 65 Cal.App.2d 781 [151 P.2d 549] [administrative board refused to take action, therefore no need to petition for rehearing].) Another exception appears in *Bernstein* v. *Smutz,* 83 Cal.App.2d 108 [188 P.2d 48], wherein the court held that where an administrative agency had no power to act except to deny the application, no resort to it was necessary before taking court action.

■ In the instant case, the state board of education is not a lawmaking body and does not have the power to disregard, amend or repeal sections 12912, 13130 or 13207, Education Code, under which it would function in the case. As previously decided in this opinion, the provisions were mandatory in form leaving nothing upon which either the defend-

ant commission of credentials or defendant state board of education could act. Not only were these administrative bodies presented with mandatory provisions of the code sections, but prior to the date of the filing of plaintiff's application, the Supreme Court had decided *DiGenova* v. *State Board of Education, supra.* The law was settled, which settling left no power to act residing in either of the administrative bodies. Under the facts of this case, an exception to the exhausting administrative remedies is made out and plaintiff did not have to take an appeal to the defendant state board of education before filing this action.

Judgment affirmed.

Draper, Acting P. J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 20, 1961.