[L.A. No. 29980. In Bank. Oct. 26, 1972.]

BOARD OF TRUSTEES OF THE LOS ANGELES JUNIOR COLLEGE DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Appellant, v. DEENA METZGER, Defendant and Respondent.

## COUNSEL

John D. Maharg, County Counsel, Ron Apperson, Deputy County Counsel, Harney, Ford & Schlottman, David M. Harney and Robert E. Ford for Plaintiff and Appellant.

Stewart & Finkel and David B. Finkel for Defendant and Respondent.

Hilbert P. Zarky, A. L. Wirin, Fred Okrand and Laurence R. Sperber as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

BURKE, J.—Plaintiff Board appeals from a judgment of the Los Angeles Superior Court ordering reinstatement of defendant Deena Metzger, a permanent, certificated employee of the Los Angeles Junior College Dis-

trict. Board had sought to suspend and dismiss defendant on charges of "immoral conduct" and "evident unfitness for service" (Ed. Code, § 13403, subds. (a), (e)), but the trial court concluded that these charges were untrue and were insufficient to constitute cause for her discharge or supension. We have concluded that the trial court's judgment must be affirmed, having the support of substantial evidence in the record.

The Board's charges were based exclusively on defendant's admitted use, in a first-year junior college class in English at Los Angeles Valley College, of a poem entitled "Jehovah's Child" and an advertising pamphlet or brochure entitled "You Can Become a Sexual Superman." The poem, composed by defendant herself, is liberally sprinkled with Anglo-Saxon obscenities, slang references to male and female sexual organs and to sexual activity, and profane references to Jehovah and Christ. The brochure, an advertisement for "The Picture Book of Sexual Love," contains nine photographs of an entwined nude couple; although these photographs conceal the genitalia, they suggest that the couple is engaging in sexual intercourse.

The record indicates that the basic approved textbook being used in defendant's English class was "Contemporary Moral Issues" by Girvetz, a book which included a unit dealing with censorship, pornography and obscenity. The poem and brochure referred to above were used by defendant as supplementary reading and discussion materials. Thus, according to defendant, the poem was used to show her students that words which, on their surface, appear vulgar or coarse can be used to produce different impressions upon the reader. The brochure was assertedly used in connection with class discussion of the subject of propaganda, as an example of a blatant form of sex exploitation in advertising.

Prior to distributing and discussing the poem with her class, defendant determined that none of her students were under 18 years of age and she explained to them that they need not participate in the class discussion of the poem but could receive a substitute lesson. Neither the Board, the college administration, nor defendant's immediate superiors had adopted regulations or directives restricting the types of supplementary teaching materials. After defendant had twice used the poem and brochure in English classes, she was for the first time[1] directed not to make further

---

[1]On May 6, 1969, defendant circulated and discussed the poem in her own English I class. and on May 15. she discussed the poem in an English I class taught by a fellow teacher. Defendant circulated and discussed the brochure in her own class on May 20.

The evidence disclosed that in December 1968 Mr. McGuire, another teacher at Valley College. had advised defendant not to use the poem in class discussions. Mc-

use thereof. Defendant obeyed this direction. Nevertheless the Board proceeded to dismiss her.

At trial, 14 professors of English testified on defendant's behalf, defending her professional judgment concerning the use of the poem and brochure as supplemental teaching materials. On the other hand, Dr. Horton, president of Valley College, testified that defendant's use of her poem and the brochure was inappropriate in an English I class. Mr. McGuire, an instructor at Valley College and former chairman of the English department, gave his opinion that defendant used poor judgment in the matter. One of defendant's students, Mr. Benshoof, testified that he was offended by the poem and brochure; however, it was stipulated that four other students would testify if called that they had benefited from the discussion and that, to their knowledge, no one in the class had exhibited an "adverse reaction" except for student Benshoof.

Defendant also introduced evidence showing that her teaching record was otherwise unblemished, that she had received the highest possible rating upon the quality of her teaching and ability to teach, and that she ranked first out of 80 applicants on the English qualifying examinations.

The trial court found the evidence insufficient to show either that defendant acted with an improper motive, that her use of the poem and brochure was "out of line" with modern academic practice, or that any student was harmed by exposure to these materials. The court concluded that the evidence did not establish either "immoral conduct" or "evident unfitness for service," and that the charges against defendant "insofar as they refer to immoral conduct and evident unfitness for service, are untrue, and are insufficient to constitute cause for defendant's discharge or suspension." Accordingly, the trial court ordered plaintiff Board to reinstate defendant with retroactive benefits. The Board appeals from the adverse judgment.

The Board asks us to hold that defendant's conduct, as a matter of law, constituted "immoral conduct" within the meaning of section 13403, subdivision (a). Board relies upon cases which have approved a broad definition of the term "immoral" as anything "hostile to the welfare of the general public and contrary to good morals," and including "conduct inconsistent with rectitude, or indicative of corruption, indecency, depravity, dissoluteness; or as wilful, flagrant, or shameless conduct showing moral indifference to the opinions of respectable members of the community, and as an

Guire admittedly had no authority, however, to direct defendant's methods of teaching or to forbid her to use the poem, and the trial court expressly found that defendant was not ordered in advance to refrain from using the poem and brochure in classes. Defendant was apparently first reprimanded by her superior, Dr. Horton, on May 21, 1969, after each of the incidents in question had occurred.

inconsiderate attitude toward good order and the public welfare." (*Orloff* v. *Los Angeles Turf Club,* 36 Cal.2d 734, 740 [227 P.2d 449]; see *Palo Verde etc. Sch. Dist.* v. *Hensey,* 9 Cal.App.3d 967, 971-972 [88 Cal.Rptr. 570]; *Board of Trustees* v. *Hartman,* 246 Cal.App.2d 756, 763 [55 Cal.Rptr. 144].) It is evident, Board contends, that reasonable men could find that defendant acted "immorally" in intentionally exposing her students to writings which contained indecent and profane material.

On the other hand, defendant contends that her conduct could not have constituted "immoral conduct" in the absence of evidence indicating an unfitness to teach. (See *Morrison* v. *State Board of Education,* 1 Cal.3d 214, 220-230 [82 Cal.Rptr. 175, 461 P.2d 375], involving revocation of a life teaching diploma for "immoral or unprofessional conduct," or for "any act involving moral turpitude," under Ed. Code, § 13202.) We must point out, however, that the record in this case is not totally devoid of evidence indicating defendant's unfitness to teach. As we stated in *Morrison,* one factor to consider in determining whether a teacher's conduct indicates his unfitness to teach is "the likelihood that the conduct may have adversely affected students . . . ." (1 Cal.3d at p. 229.) In the instant case, evidence was introduced that at least some teachers thought the poem and brochure inappropriate for use in defendant's class, and that one student was offended by these materials. (See *Governing Board* v. *Brennan,* 18 Cal.App.3d 396, 402 [95 Cal.Rptr. 712]; *Comings* v. *State Bd. of Education,* 23 Cal.App. 3d 94, 103-104 [100 Cal.Rptr. 73].) In any event, we need not reach the question whether substantial evidence existed to support a finding that defendant engaged in "immoral conduct," for the trial court made a contrary finding.

◼ In the case of permanent teachers under the law in effect at the time of the proceedings herein, the responsibility for determining the truth of the dismissal charges *and* their sufficiency as grounds for dismissal was vested in the trial court, not the governing board. (See former Ed. Code, § 13412;[2] *Midway School Dist.* v. *Griffeath,* 29 Cal.2d 13 [172

---

[2]Section 13412, prior to amendment in 1971, provided as follows: "When any employee who has been served with notice of the governing board's intention to dismiss him demands a hearing, the governing board shall have the option either (a) to rescind its action, or (b) to file a complaint in the superior court of the county in which the school district or the major part thereof is located, setting forth the charges against the employee and asking that the court inquire into the charges and determine whether or not the charges are true, and if true, *whether or not they constitute sufficient grounds for the dismissal of the employee,* under the provisions of this code, and for judgment pursuant to its findings." (Italics added.)

See also former sections 13435 (which provided for the court to adjudge "whether or not the governing board may dismiss the employee") and 13436 (which prohibited dismissal of the employee in the absence of a judgment authorizing such action).

P.2d 857].) Unlike dismissal procedures in other civil service systems, the first hearing on the merits of the dismissal of a permanent teacher under the prior law was judicial, not administrative. (See Coan, *Dismissal of California Probationary Teachers,* 15 Hastings L.J. 284, 295; George, *Dismissal of Permanent Teachers,* 3 Santa Clara Law. 164.) The employee, being informed of the school board's decision to dismiss him, could under former section 13412 demand a hearing in superior court to determine whether or not he could be dismissed. "Thus, in these cases the court conducts what in other areas of the civil service would be an administrative hearing. [Par.] Whether this rather unique procedure amounts to superior court review of an administrative determination, or an ordinary decision of the superior court, the scope of our [appellate] review is the same. [Citations.] *We must determine only whether the findings and conclusions of the trial court, as a matter of law, lack support in the record.*" (Italics added, *Board of Trustees* v. *Stubblefield,* 16 Cal.App.3d 820, 824 [94 Cal.Rptr. 318]; see *Midway School Dist.* v. *Griffeath, supra,* 29 Cal.2d 13, 16-18; *Palo Verde etc. Sch. Dist.* v. *Hensey, supra,* 9 Cal.App.3d 967, 970; *Board of Trustees* v. *Porini,* 263 Cal.App.2d 784, 786 [70 Cal.Rptr. 73].)

■ As noted above, the trial court herein determined that defendant's conduct constituted neither "immoral conduct" nor "evident unfitness to teach," and was insufficient ground for her dismissal. That determination was supported by substantial evidence, including the isolated nature of the occurrences, the absence of regulations defining the content and suitability of supplemental teaching materials, defendant's willingness to cooperate with school officials once directed to stop using the poem and brochure in her classes, the testimony of her fellow teachers regarding the propriety of her actions, and the stipulated testimony of several students regarding their reactions to the incidents in question.

Plaintiff Board relies upon such cases as *Palo Verde etc. Sch. Dist.* v. *Hensey, supra,* 9 Cal.App.3d 967, wherein a dismissal of a permanent teacher for "immoral conduct" was upheld under Education Code section

---

In 1971, however, the Legislature repealed sections 13435 and 13436 (among others), amended section 13412, and added new section 13413, to provide for an initial *administrative* hearing before either a hearing officer or a three-member "Commission on Professional Competence," depending upon the nature of the charges. (Stats. 1971, ch. 361.) For example, if the charges are immoral conduct or evident unfitness for service, the hearing shall be conducted by a commission rather than an examiner. (§ 13413.) The decision of the commission may be reviewed by a court which "shall exercise its independent judgment on the evidence." (§ 13414.) Therefore, although the 1971 amendments inject an administrative phase into the dismissal proceedings, the trial court continues to exercise a judgment independent of the governing board.

13412. In *Hensey*, a junior college teacher made reference in class to "whores" and "whorehouses," made an "obscene" gesture in front of students, and used other vulgar language in describing school property. On the basis of the evidence, the trial court determined that the charges were true and constituted sufficient grounds for dismissal. Since "[a]ll of the incidents taken in the aggregate serve as a substantial basis for the trial court's determination," the Court of Appeal affirmed the judgment. (9 Cal.App.3d at p. 976.)

The distinguishing factor in *Hensey* was, of course, the fact that the trial court there exercised its statutory discretion adversely to defendant teacher. There being substantial evidence in support of the trial court's determination in *Hensey,* the Court of Appeal quite properly affirmed the judgment, having no authority to substitute its own views concerning the gravity of the conduct involved in that case. By similar reasoning, we must affirm the decision of the trial court below since that decision was solidly based upon substantial evidence in the record.

We emphasize that our ruling should not be viewed as insulating permanent teachers from discipline on account of their classroom use of indecent or profane works or writings. As the *Hensey* case indicates, such conduct may, under appropriate circumstances, constitute "immoral conduct" justifying such discipline.[3] Yet the Legislature has chosen to leave to our trial courts the delicate task of determining whether, in a particular case, discipline may be imposed, and plaintiff Board has failed to convince us that the trial court herein discharged that task in a manner contrary to law.

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

---

[3]". . . the calling [of a teacher] is so intimate, its duties so delicate, the things in which a teacher might prove unworthy or would fail are so numerous that they are incapable of enumeration in any legislative enactment . . . the teacher is entrusted with the custody of children and their high preparation for useful life. His habits, his speech, his good name, his cleanliness, the wisdom and propriety of his unofficial utterances, his association, all are involved. His ability to inspire children and to govern them, his power as a teacher, and the character for which he stands are matters of major concern in a teacher's selection and retention." (*Board of Education v. Swan,* 41 Cal.2d 546, 553-554 [261 P.2d 261], quoting with approval from *Goldsmith* v. *Board of Education,* 66 Cal.App. 157, 168 [225 P. 783].)