[L.A. No. 30705. July 21, 1977.]

BOARD OF EDUCATION OF LONG BEACH UNIFIED SCHOOL DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Appellant, v. JACK M., Defendant and Respondent.

**COUNSEL**

John H. Larson, County Counsel, Louis V. Aguilar and Gregory Houle, Deputy County Counsel, for Plaintiff and Appellant.

John S. Williams for Defendant and Respondent.

Paul D. Powers as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**TOBRINER, J.**—On October 19, 1972, defendant was arrested for an alleged homosexual solicitation in a public restroom. Although no charges were ever filed against him, plaintiff school board initiated proceedings in the superior court to establish its right to discharge defendant from his tenured teaching position. The superior court, however, resolved conflicting evidence in defendant's favor and found that his conduct did not demonstrate unfitness to teach. The board appeals from the judgment in favor of defendant.

In accord with the unquestioned principle that trial court findings supported by substantial evidence will be upheld on appeal, we affirm the judgment below. The board's attempt to escape the application of this principle of appellate review by claiming that defendant's conduct in itself proves unfitness to teach must fail, since neither statute nor decisional authority has applied a rule of per se unfitness to persons who were not convicted of specified sex offenses. The board's argument, moreover, conflicts with legislation enacted in 1976 that grants even to a person convicted of a specified sex offense the right to a fitness hearing; consistent with the purpose of that legislation we cannot hold the commission of such acts demonstrates unfitness per se.

### 1. *Proceedings in the trial court*

Defendant has been continuously employed for 16 years as a permanently certificated teacher for elementary schools. Until the incident of October 19, 1972, he was recognized as a teacher of fitness, ability and unimpeached moral character. On that date he was arrested for violating Penal Code section 647, subdivision (a), which penalizes as a misdemeanor the solicitation of anyone to engage in or engagement in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view. Although no charges were filed, defendant immediately reported his arrest to Mrs. Joan White, principal of the elementary school in which he taught the fifth grade. The board filed a complaint in the superior court, pursuant to Education Code section 13412 as it then read,[1] charging him with "immoral conduct" and "evident unfitness for service."

---

[1]Prior to March 7, 1973, Education Code section 13412 provided that: "When any employee who has been served with notice of the governing board's intention to dismiss him demands a hearing, the governing board shall have the option either (a) to rescind its action, or (b) to file a complaint in the superior court of the county in which the school

The only two witnesses to the incident were defendant and the arresting officer. The officer testified to the following sequence of events. Entering a department store restroom equipped with five doorless stalls, he occupied the stall furthest from the door. Defendant entered the adjoining stall, bent down and looked up at the officer from under the partition separating the stalls. The officer dressed and, looking into defendant's stall, observed defendant masturbating. Defendant then beckoned to the officer, saying "Come here. You will like this." The officer thereupon arrested defendant for lewd conduct in a public place. (Pen. Code, § 647, subd. (a).) Defendant testified that he had not masturbated or solicited the officer, but the trial court upheld the officer's version.

The remaining testimony concerned defendant's fitness to teach. The board presented the testimony of Mrs. White, defendant's principal, and Mr. Lepic, an experienced school principal who did not know defendant but testified as an expert on teaching qualifications. Defendant countered with testimony from Dr. Davis, a psychiatrist who was experienced in examining persons convicted of sexual offenses.

Mrs. White testified that defendant was fit and competent in all respects as a teacher; that she knew that he was under heavy emotional stress at the time in question but that nevertheless she felt that the charged conduct demonstrated "unusual judgment and improper reaction to stress and pressure." She stated that she had no reason to believe that he could not now perform his specific duties as a certified teacher but that she was not willing to take the chance that the incident might recur and that, therefore, she felt that defendant was unfit to teach.

Mr. Lepic testified as to the essential qualifications of an elementary school teacher—adequate professional training and development of a close relationship with students, parents and staff. In response to a hypothetical question premised upon the account given by the arresting officer, he gave his opinion that defendant was unfit to teach. As reasons for his opinion he testified that defendant could not provide a behavioral

district or the major part thereof is located, setting forth the charges against the employee and asking that the court inquire into the charges and determine whether or not the charges are true, and if true, whether or not they constitute sufficient grounds for the dismissal of the employee, under the provisions of this code, and for judgment pursuant to its findings." The 1971 Legislature amended this section to provide for an administrative hearing before the Commission on Professional Competence, with superior court review by administrative mandamus. The board's complaint in the present case was filed on March 6, 1973, one day before the 1971 amendment took effect.

example to students and that his conduct would create uneasiness and an erosion of confidence in those with whom he was in association, such as students, parents and staff. He was unaware of any knowledge by those groups of such conduct or any attendant publicity, but was disturbed by the possibility of recurrence, depending upon the tensions and pressures to which defendant might be subjected in the future.

Dr. Davis' background indicated that he was well experienced as a psychiatrist in the examination and treatment of sexual deviates. He concluded from the history of defendant and his clinical examination of defendant that defendant was not a homosexual; that if the arresting officer's version were true, this account would indicate to the doctor an isolated act of aggressive behavior by one of an otherwise passive sexual disposition precipitated by an unusual accumulation of pressure and stress stemming from his mother's serious illness; that it would be most unusual for an individual with a predisposition to aggressive homosexual behavior to reach middle age without some prior antisocial conduct reflected in a police record, and here there was none; and that even if the incident happened, he believed there was no danger of recurrence because of the trauma to defendant from this arrest and the trial proceedings. He believed that there was no danger to pupils or associates, and no possibility of recurrence, and because of a medically recognized proclivity of sexual deviates to follow a specific pattern, the conduct attributed to defendant would not be consistent with acts endangering children or associates.

The trial court resolved the conflicting testimony on the issue of fitness in favor of defendant. Finding that defendant's conduct did not demonstrate an unfitness to teach, the court entered judgment ordering his reinstatement with back pay.

2. ■ *Substantial evidence supports the trial court's finding that defendant's conduct does not demonstrate his unfitness to teach.*

Defendant's fitness to teach was the factual issue which faced the trial court. Although defendant was charged with "immoral or unprofessional conduct" (Ed. Code, § 13403, subd. (a)) and "evident unfitness for service" (Ed. Code, § 13403, subd. (e)), we have previously held that the determinative test was fitness to teach; the terms "immoral" or "unprofessional conduct" are so broad and vague that, standing alone, they could be constitutionally infirm; hence the proper criteria is fitness to teach. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82

Cal.Rptr. 175, 461 P.2d 375].[2] Observing that a statute can constitutionally bar a person from practicing a lawful profession only for reasons related to his fitness to practice that profession (see *Newland* v. *Board of Governors,post,* p. 705 [139 Cal.Rptr. 620, 566 P.2d 254], and cases there cited), we concluded in *Morrison* that the board cannot "abstractly characterize the conduct in this case as 'immoral,' 'unprofessional,' or 'involving moral turpitude' within the meaning of section 13202 . . . unless that conduct indicates that petitioner is unfit to teach." (1 Cal.3d at p. 229; see *Comings* v. *State Bd. of Education, supra,* 23 Cal.App.3d 94, 103 and cases there cited.)

Pursuant to these rulings the trial court found that defendant's conduct did *not* demonstrate an unfitness to teach. ■ Our sole task is to determine "whether the evidence, viewed in the light most favorable to [defendant], sustains [these] findings." (*Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 309 [196 P.2d 20]; *Board of Trustees* v. *Metzger, supra,* 8 Cal.3d 206, 211; *Board of Trustees* v. *Stubblefield, supra,* 16 Cal.App.3d 820, 824.) Moreover, "in examining the sufficiency of the evidence to support a questioned finding an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." (*Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157]; see 6 Witkin, Cal. Procedure (2d ed. 1971) p. 4237 and cases there cited.) If appellate scrutiny reveals that substantial evidence supports the trial court's findings and conclusions, the judgment must be affirmed.

■ Relying upon the foregoing authorities, the trial court accordingly framed the following findings in terms of fitness to teach, and those facts which bear on the subject of fitness: "[¶] 6. Defendant's conduct did not come to the attention of the public, students, parents, fellow teachers, and other staff members other than to defendant's immediate superior to

---

[2]Although *Morrison* concerned the revocation of a credential under section 13202, its reasoning applies in large measure to a proceeding for dismissal of a permanent teacher under section 13403. Decisions following *Morrison* have therefore construed "immoral or unprofessional conduct" under section 13403 to mean only such conduct as indicates unfitness to teach. (*Board of Trustees* v. *Judge* (1975) 50 Cal.App.3d 920, 929 [123 Cal.Rptr. 830]; *Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94, 103-104 [100 Cal.Rptr. 73, 47 A.L.R.3d 742]; *Oakland Unified Sch. Dist.* v. *Olicker* (1972) 25 Cal.App.3d 1098, 1106-1108 [102 Cal.Rptr. 421]; see *Board of Trustees* v. *Metzger* (1972) 8 Cal.3d 206, 210 [104 Cal.Rptr. 452, 501 P.2d 1172]; *Board of Trustees* v. *Stubblefield* (1971) 16 Cal.App.3d 820, 826 [94 Cal.Rptr. 318].)

whom he reported the incident. [¶] 7. Defendant's conduct was an isolated act precipitated by an unusual accumulation of pressure and stress. There is no danger that defendant will repeat the conduct. [¶] 8. Defendant does not present a threat to students or fellow teachers. [¶] 9. Defendant's conduct does not demonstrate an unfitness to teach."

Review of the record reveals ample evidence to support those findings. Finding number 6 rests on the undisputed testimony of defendant and Mrs. White, his principal; finding number 7 on the explicit testimony of Dr. Davis. Finding number 8 responds to our holding in *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 235 that "an individual can be removed from the teaching profession only upon a showing that his retention . . . poses a significant danger of harm. . . ." (See *Pettit* v. *State Board of Education* (1973) 10 Cal.3d 29, 34 [109 Cal.Rptr. 665, 513 P.2d 889]; *Oakland Unified Sch. Dist.* v. *Olicker, supra,* 25 Cal.App.3d 1098, 1108.) This finding rests upon defendant's testimony respecting his teaching record and his response to his arrest, Mrs. White's testimony confirming defendant's competent performance as a teacher and his ability to perform his teaching duties; and Dr. Davis' testimony that the restroom incident was an isolated and aberrant act not indicative of defendant's ordinary character and ability, that defendant would learn from his experience, and that he would not repeat the conduct. Finally, the evidence we have recited in support of findings 6, 7, and 8, viewed in the light of defendant's proven 16-year record of competent teaching, fully supports the trial court's *ultimate* finding that defendant's conduct did not demonstrate an unfitness to teach.[3]

---

[3]Our decision in *Morrison*, which established fitness to teach as the crucial issue in proceedings to discharge a teacher or revoke his credentials, did not resolve whether "fitness" was an issue of ultimate fact or one of law. (See *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 238.) Later Court of Appeal decisions, however, classify fitness as a question of ultimate fact. In *Board of Trustees* v. *Judge, supra,* 50 Cal.App.3d 920, for example, the trial court had found that the teacher, although convicted of cultivation of marijuana, was not unfit to teach. Observing that substantial evidence supported that finding, the Court of Appeal stated that "[s]ince the matter is one of fact in this instance, we are in any event bound by it." (50 Cal.App.3d at p. 930.) *Oakland Unified Sch. Dist.* v. *Olicker, supra,* 25 Cal.App.3d 1098, cited by the board to support its claim that unfitness is a question of law, does not so hold; that decision merely affirms the rule that "*where the facts are undisputed* the ultimate conclusion to be drawn from such facts is a question of law." (25 Cal.App.3d at pp. 1106-1107.) (Italics added.)

In theory, a determination is one of ultimate fact if it can be reached by logical reasoning from the evidence, but one of law if it can be reached only by the application of legal principles. (See *Levins* v. *Rovegno* (1886) 71 Cal. 273, 278 [12 P. 161]; *Hayward Lbr. Co.* v. *Construction etc. Corp.* (1952) 110 Cal.App.2d 1, 3 [241 P.2d 1054] and cases there cited.) Under this analysis, fitness to teach is probably a question of ultimate fact. Although resort to legal principles is necessary to establish that fitness to teach, instead of

In challenging the trial court's findings, the board argues that students, viewing their teacher "in the light of an exemplar" (*Board of Education* v. *Swan* (1953) 41 Cal.2d 546, 552 [261 P.2d 261]), may emulate defendant's act; that defendant may be unable to fulfill his duty "to impress . . . and to instruct [his students] in manners and morals" (Ed. Code, § 13556.5); and that defendant's conduct evidenced a lack of judgment and discretion. But these arguments are really no more than disputable inferences which the trial court rejected in favor of other inferences more favorable to defendant. ■ The courts uniformly hold that "[w]here two or more inferences reasonably can be drawn from the facts, an appellate court is without power to substitute its deductions for those of the trial court." (*Slater* v. *Alpha Beta Acme Markets, Inc.* (1975) 44 Cal.App.3d 274, 278 [118 Cal.Rptr. 561, 72 A.L.R.3d 1264].)

Moreover, the evidentiary record provides reasonable grounds to justify the trial court in rejecting the inferences drawn by the board. Proof that defendant's act was unknown to his students, testimony that he would not repeat such conduct, the absence of evidence that he had by word or example influenced students to engage in improper activity all combine to indicate the insubstantiality of any risk that students would imitate his conduct.[4]

---

immorality or moral turpitude, is the crucial issue, the determination of fitness to teach flows from the evidence itself without further resort to legal principles.

Even if we were to classify the trial court's finding that defendant was not unfit to teach as a conclusion of law, that concession would not affect the outcome of this appeal. The conclusion that defendant was not unfit to teach would follow from the court's findings that the charged act was unknown to students and fellow teachers, that it would not be repeated, and that defendant's continued employment would not risk harm to students or teachers.

[1]The board relies on language from *Board of Education* v. *Swan, supra,* 41 Cal.2d 546, where we stated that "[a] teacher . . . is regarded by the public and pupils in the light of an exemplar, whose words and actions are likely to be followed by the children coming under her care and protection." (41 Cal.2d at p. 552; see *Moser* v. *State Bd. of Education* (1972) 22 Cal.App.3d 988, 991-992 [101 Cal.Rptr. 86]; *Board of Trustees* v. *Stubblefield, supra,* 16 Cal.App.3d 820, 824; *Goldsmith* v. *Board of Education* (1924) 66 Cal.App. 157, 168 [225 P. 783].) *Swan,* however, overstates the case; as pointed out in *Blodgett* v. *Board of Trustees* (1971) 20 Cal.App.3d 183, 192 [97 Cal.Rptr. 406]: "Any requirement that teachers exemplify the subjects they teach and embody all of the qualities which they hope to instill in their students would be utterly impossible of fulfillment."

In any event, the fear that students will emulate immoral or illegal conduct of their teachers becomes realistic only under two conditions. First, the teacher's conduct must be sufficiently notorious that the students know or are likely to learn of it. (See *Andrews* v. *Drew Municipal Separate School District* (5th Cir. 1975) 507 F.2d 611, 616-617; *Comings* v. *State Bd. of Education, surpa,* 23 Cal.App.3d 94, 104-106; Comment (1973) 61 Cal.L.Rev. 1442, 1451, 1458; Comment, 1973 Utah L.Rev. 797, 806 fn. 66.) Second, the teacher must continue to model his past conduct (as in *Watson* v. *State Bd. of Education* (1971) 22 Cal.App.3d 559 [99 Cal.Rptr. 468]); the teacher who committed an indiscre-

The board presented no evidence to show that defendant, in 16 years of teaching, had failed to impress and instruct his students in manners and morals (Ed. Code, § 13556.5); defendant's principal testified that defendant was capable of performing his statutory duties. And although defendant's actions on October 19, 1972, may suggest a lack of judgment and discretion, the trial court found that this particular conduct "was an isolated act precipitated by an unusual accumulation of pressure and stress." The absence of any other incident in defendant's teaching career suggestive of lack of judgment or discretion further distinguishes the aberrant character of the restroom incident. Based on the evidentiary record, the trial court could reasonably conclude that the isolated incident of poor judgment was overweighed by years of demonstrated teaching competence, and that on balance defendant possesses the qualities of character necessary for teaching fitness.

We reiterate: the task of this court is to determine only whether the findings and conclusions of the trial court, as a matter of law, lack support in the record. ■ Since testimonial evidence, including probative expert testimony (see *Pettit* v. *State Board of Education, supra,* 10 Cal.3d 29, 35), and reasonable inferences drawn from that evidence, support the findings of the trial court, we must affirm the judgment below.

3. ■ *The fact that defendant may have committed public sexual offense does not authorize an appellate court to disregard contrary trial court findings and declare him unfit to teach per se.*

Confronting the adverse findings of fact by the trial court, the board shifts its ground and contends that proof that defendant committed a public sexual offense demonstrates unfitness to teach per se. As we shall explain, the pre-1976 statutes in effect at the time of trial of this case carefully distinguished between persons convicted of listed sex offenses, who were subject to automatic sanctions, and those not convicted, who were entitled to a fitness hearing. The board's assertion that a teacher not convicted of a listed offense is unfit per se undermines that statutory distinction; by deeming irrelevant all evidence bearing on fitness except

tion, paid the penalty, and now seeks to discourage his students from committing similar acts may well be a more effective supporter of legal and moral standards than the one who has never been found to violate those standards. (See Willemsen, *Sex and the School Teacher* (1974) 14 Santa Clara Law. 839, 855.) Since these conditions will vary from case to case, proof that one has at some past time committed a crime should not in itself suffice to demonstrate that he is not now and never will be a suitable behavior model for his students.

evidence that he did or did not commit the charged act, the contention would effectively nullify the teacher's statutory right to a fitness hearing. And as we shall further explain, the 1976 statutes, which govern the appeal of this case, grant even some persons *convicted* of listed sex crimes a fitness hearing; the board's claim that commission of such a crime demonstrates unfitness per se cannot be reconciled with that legislation.

The board bases its argument on the theory that defendant's conduct could be described as constituting a violation of penal statutes (Pen. Code, §§ 314, 647, subds. (a) and (d)), conviction for which would require a teacher's dismissal under pre-1976 law. (See Ed. Code, §§ 12912; 13403, subd. (h); 13255.) The controlling statutes, however, impose automatic sanctions only upon persons *convicted* of a listed crime. (See Ed. Code, §§ 13175; 13207; 13220.16; 13255; 13403, subd. (h).) No statute imposed automatic sanctions upon persons *not convicted* of listed crimes.

Cases interpreting the pre-1976 statutes conform to this distinction between persons convicted of listed crimes and those not convicted. Those three decisions that have denied teachers a fitness hearing involved teachers who were convicted of a listed crime. (*DiGenova* v. *State Board of Education* (1955) 45 Cal.2d 255 [288 P.2d 862]; *Purifoy* v. *State Board of Education* (1973) 30 Cal.App.3d 187 [106 Cal.Rptr. 201]; *Vogulkin* v. *State Board of Education* (1961) 194 Cal.App.2d 424 [15 Cal.Rptr. 335].) Distinguishing the case of one convicted of a listed crime, our decision in *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, established the right of a person not so convicted to a fitness hearing. (See 1 Cal.3d at pp. 218, fn. 2 and 219, fn. 4.) Our listing in *Morrison* of the factors to be considered in evaluating fitness made it clear that the hearing could not be limited to the single question whether the teacher committed the charged act.[5]

---

[5]We stated that "In determining whether the teacher's conduct . . . indicates unfitness to teach [the trier of fact] may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, . . . the extenuating or aggravating circumstances, if any, surrounding the conduct, [and] the likelihood of the recurrence of the questioned conduct. . . ." (1 Cal.3d at p. 229.) (Fns. omitted.) Although this listing in *Morrison* did not mention the notoriety and publicity accorded a teacher's conduct as a consideration bearing on fitness, *Morrison* mentioned the absence of notoriety as one ground for its conclusion that the record did not demonstrate teaching unfitness; other decisions have confirmed the relevance of this consideration. (See *Pettit* v. *State Board of Education, supra,* 10 Cal.3d 29, 35, fn. 5 and cases there cited.)

Cases subsequent to *Morrison* have without exception granted a fitness hearing to persons not convicted of the listed crimes. Although the board relies on several decisions (*Pettit* v. *State Board of Education, supra,* 10 Cal.3d 29; *Moser* v. *State Board of Education, supra,* 22 Cal.App.3d 988; *Board of Trustees* v. *Stubblefield, supra,* 16 Cal.App.3d 820; *Sarac* v. *State Bd. of Education* (1967) 249 Cal.App.2d 58 [57 Cal.Rptr. 69]) which upheld sanctions against teachers who committed sexual offenses, these cases do not support the board's theory of unfitness per se. In each of the cited decisions, the trial court rendered findings of fact adverse to the teacher, and the appellate court merely affirmed the findings below as supported by substantial evidence. None declared a rule of per se unfitness. In *Board of Trustees* v. *Metzger, supra,* 8 Cal.3d 206, 210, we observed that the statutory "responsibility for determining the truth of the dismissal charges *and* their sufficiency as grounds for dismissal was vested in the trial court"; we there distinguished a case factually similar to *Metzger* on the ground that "the *trial court* there exercised its statutory discretion *adversely* to defendant teacher." (*Id.,* at p. 212.) (Italics added.) The same language differentiates the present case, in which the trial court found *in favor* of the teacher, from those precedents in which it exercised its discretion to resolve factual conflicts *adversely* to the teacher.

Even though both statutes and cases distinguish between persons convicted of listed crimes and those not convicted, the board argues that the trial court finding concerning defendant's conduct should be treated as the *equivalent* of a conviction.[6] Presiding Justice Roth, in his dissenting opinion in the Court of Appeal, convincingly refutes that argument. He states that: "It is inherently abhorrent to the American ethic of fair play to permit a state agency to dismiss a teacher by the use of the finding as if it had the effect of a final criminal judgment. [A] teacher accused by Board in a proceeding authorized by the Education Code cannot in any such proceeding avail himself of a jury trial or any other rights allowed a defendant in a criminal action. It would seem therefore that as a condition precedent to basing a teacher's dismissal on

---

[6]The board's suggestion that proof of the criminal nature of defendant's conduct demonstrates defendant's disrespect for law, and thus his unfitness as a matter of law conflicts with precedent. Proof of the commission of a criminal act does not alone demonstrate the unfitness of the teacher, but is simply one of the factors to be considered. (*Board of Trustees* v. *Judge, supra,* 50 Cal.App.3d 920, 925; *Comings* v. *State Bd. of Education, supra,* 23 Cal.App.3d 94; see *Pettit* v. *State Board of Education, supra,* 10 Cal.3d 29, 33 fn. 4; cf. *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553] (physician); *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187 [107 Cal.Rptr. 852] (state employee).)

a charge which equates with a crime involving moral turpitude, upon which Board would rely as *per se* proof of unfitness, *the least* an accused would be entitled to is that the conduct so charged should in fact be supported by a criminal conviction thereof. . . . [T]he fact that [defendant] could have been charged with any one of three crimes makes him guilty of none and is no support for argument that the conduct reflected in the finding was so heinous that all the other findings made by the trier of fact which refute Board's charges must be disregarded."

We now turn to the effect of the 1976 legislation amending Education Code section 12910. That legislation, by severely narrowing the list of persons who can be deemed unfit per se, further undermines the board's position.

Effective as of January 1, 1977, section 12910 now provides that "Notwithstanding any other provision of this code, no person shall be denied a hearing solely on the basis that he has been convicted of a crime if he has obtained a certificate of rehabilitation under Section 4852.01 and following of the Penal Code, and if his probation has been terminated and the information or accusation has been dismissed pursuant to Section 1203.4 of the Penal Code." The term "crime" in this section is plainly intended to encompass the specific sex crimes listed in section 12912, many of which require public conduct or solicitation as an element of the crime.[7] But if some persons convicted of public sex offenses are entitled to fitness hearings, as the statute now provides, it cannot logically be maintained that all persons who commit such offenses are unfit as a matter of law; acceptance of the board's proposition would render the right to a hearing granted by the Legislature a meaningless formality.

Our opinion in *Newland* v. *Board of Governors* characterizes the 1976 Education Code amendments as signifying legislative recognition that prior laws treating a conviction as conclusive proof of unfitness were

---

[7]Education Code section 12912 listed specified sex offenses conviction for which, under pre-1976 law, entailed automatic denial of an application for a credential, revocation of an existing credential, and dismissal of the teacher. Section 12912.5 listed particular narcotics offenses, conviction of which entailed the same consequences. Section 13206 specified various serious felonies; conviction of such felonies required the revocation of an existing credential but did not necessarily bar the person from applying for a new credential. (See 21 Ops.Cal.Atty.Gen. 65 (1953).) The term "crime" in amended section 12910 presumably refers to the crimes listed in sections 12912, 12912.5, and 13206, since conviction of an unlisted crime could not be invoked to deny a hearing even under the pre-1976 law. (See *Board of Trustees* v. *Judge, supra,* 50 Cal.App.3d 920 (conviction for cultivation of marijuana, an unlisted offense).)

unduly harsh and excluded many who were fit to teach. (*Post,* p. 712.) Expressly rejecting the proposition that all persons, such as Newland, who had been *convicted* of lewd conduct in a public place were unfit per se, we concluded that the trier of fact cannot limit its hearing "to a determination of whether [Newland] committed a violation of Penal Code section 647, subdivision (a), or was convicted therefor but must conduct 'a careful and reasoned inquiry into his fitness to teach.' (*Morrison v. State Board of Education, supra,* 1 Cal.3d 214, 238-239)." (*Post,* at p. 714, fn. 11.)

If Newland, who was convicted of a listed sex offense, is entitled to a fitness hearing which conforms to the *Morrison* standards, defendant, who was not convicted, is surely entitled to no less. The per se rule that the board advocates would force the trier of fact to narrow his vision to the commission of the charged act, and compel him to ignore relevant and admissible evidence which shows that, notwithstanding the commission of that act, the teacher is presently fit. Such a rule cannot be reconciled with the "careful and reasoned inquiry" into fitness mandated by *Morrison* and *Newland.*

### 4. *Conclusion.*

Substantial evidence supports the trial court's finding that defendant's conduct did not demonstrate his unfitness to teach. Evidence admitted without objection demonstrated defendant's teaching competence, and rendered insubstantial any fear that he might repeat the charged act or otherwise harm students or fellow teachers. The trial court was not required to ignore that evidence and base a decision solely upon the single incident of October 19, 1972; it properly considered *all* evidence of fitness; on the basis of that evidence it found defendant was fit to teach. Since substantial evidence supports the trial court findings of fact and conclusions of law, we affirm its judgment directing reinstatement of defendant to his teaching position with back pay.

Bird, C. J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Sullivan, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.